Argued and submitted May 25, reversed and remanded September 27, 2000

STATE ex rel Susan LEO,
*Appellant,*

*v.*

Steve TUTHILL,
*Respondent,*

*and*

Susan LEO,
*Obligee.*

(98P-2018; CA A103214)

11 P3d 270

Judy C. Lucas, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Russell Lipetzky argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

HASELTON, P. J.

### HASELTON, P. J.

The State of Oregon, as petitioner on behalf of the State of Alaska,[1] appeals from a judgment of the Polk County Circuit Court that refused to register a 1987 Alaska support order. The trial court denied registration of the Alaska order because it concluded that, under the Revised Uniform Reciprocal Enforcement of Support Act (RURESA),[2] a subsequent, 1989 Josephine County, Oregon, support order modified and effectively superceded the Alaska order. On appeal, the state argues that, because the 1989 Josephine County order did not "specifically provide" for modification of the preexisting Alaska support order, the Oregon and Alaska orders operated concurrently and, consequently, under the now-applicable statute, the Uniform Interstate Family Support Act (UIFSA), the 1987 Alaska order is controlling because it was "issued by a tribunal in the current home state of the child." ORS 110.333(2)(b). We agree with the state and reverse.

The material facts are undisputed. In 1983, father and mother were divorced in Alaska, and the Alaska court ordered father to pay $500 per month support for the parties' one child. In July 1987, the Alaska court issued a consent order reducing father's support obligation to $200 per month and further requiring father to pay $50 per month toward arrearages.

Thereafter, father moved to Grants Pass, Oregon. In April 1988, the Alaska Child Support Enforcement Division initiated a RURESA "Action Request," asking the State of Oregon Support Enforcement Division to "enforce" the order for support of $200 per month and to "collect arrearage[s]" which, at that time, amounted to $9,797.84. Alaska did not request *registration* of the 1987 Alaska order. In January 1989, following a hearing on that matter, the Josephine

---

[1] Unless otherwise specifically indicated, all references to "the state" are to the State of Oregon, on behalf of the State of Alaska.

[2] The RURESA, formally codified at ORS 110.005 to ORS 110.291, was enacted in 1979, *see* Or Laws 1979, ch 484, replacing the original statutory scheme, the Uniform Reciprocal Enforcement of Support Act (URESA), which was enacted in 1953. *See* Or Laws 1953, ch 427. Effective July 1, 1994, the RURESA was repealed and replaced by the Uniform Interstate Family Support Act (UIFSA). *See* Or Laws 1993, ch 449.

County Circuit Court entered an "order and judgment," ordering father to pay child support in the amount of $125 per month and entering judgment for mother for arrearages of $11,236.46.[3]

More than eight years passed. During that time, father paid child support of $125 per month as specified in the 1989 Josephine County "judgment and order"—and not $200 per month, as fixed in the 1987 Alaska order.[4]

In April 1997, the Oregon Support Enforcement Division, again on behalf of the State of Alaska, *see* ORS 110.405; ORS 110.414, sent both father and mother a "Notice of Registration of Foreign Support Order." That notice ordered father to pay support as fixed in the 1987 Alaska support order, which was to be registered in Oregon, and further indicated that, under the Alaska order, father owed $29,093.51 in arrearages. Father—who by that time was living in Polk County—objected to the registration of the 1987 Alaska order, contending that that order had been modified by the 1989 Josephine County order. *See* ORS 110.417 and ORS 110.420.[5]

---

[3] Other than the January 1989 order, the record of the Josephine County proceeding is not before us on appeal.

[4] During that interim, Oregon repealed the RURESA, which had been in effect in 1989 when the Josephine County court entered its order, and adopted the current statutory scheme, the UIFSA. *See* 170 Or App at 81 n 2.

[5] ORS 110.417 generally describes the procedures for administratively contesting the validity of a registered order before the Oregon Support Enforcement Division. ORS 110.420 provides, in part:

"(1) A party contesting the validity or enforcement of a registered order or seeking to vacate the registration has the burden of proving one or more of following defenses:

"(a) The issuing tribunal lacked personal jurisdiction over the contesting party;

"(b) The order was vacated by fraud;

"(c) The order has been vacated, suspended or modified by a later order;

"(d) The issuing tribunal has stayed the order pending appeal;

"(e) There is a defense under the law of the state to the remedy sought;

"(f) Full or partial payment has been made; or

"(g) The statute of limitation under ORS 110.411 precludes enforcement of some or all of the arrearages.

"(2) If a party presents evidence establishing a full or partial defense under subsection (1) of this section, a tribunal may stay enforcement of the registered order, continue the proceeding to permit production of additional relevant evidence and issue other appropriate orders. * * *"

In November 1997, the Oregon Support Enforcement Division held an administrative hearing on father's challenges to the registration of the 1987 Alaska order. ORS 110.417. In December 1997, the hearings officer issued an administrative order vacating the registration of the 1987 Alaska order. That order concluded that, under the RURESA, the 1989 Josephine County order *"registered* the [Alaska] order, *modified* it, and established arrearages, all at the request of the State of Alaska" (emphasis added) and, consequently:

> "What the state seeks to do here has already been done. The Alaska order in question was registered and an arrearage was established in January 1989. This proceeding therefore is barred by *res judicata.*"

The state sought review of that administrative order in Polk County Circuit Court. ORS 416.427(6). The state asserted that the 1989 Josephine County proceeding did not result in a modification of the Alaska order but, instead, that that proceeding resulted in entry of a "new support order being generated by the State of Oregon on behalf of the State of Alaska" and that, upon entry of that order, the 1987 Alaska and 1989 Oregon orders operated concurrently. The state further argued that, given that the two orders existed concurrently, the Alaska order controls under the now-applicable UIFSA provision. *See* ORS 110.333(2)(b).

In July 1998, the Polk County Circuit Court issued an order denying registration of the 1987 Alaska order. In its underlying letter opinion, the court explained:

> "The * * * Josephine County Circuit Court support order was a *modification* of the Alaska support order under [RURESA]. Oregon has continuing jurisdiction for support issues as long as the obligor remains resident of Oregon (ORS 110.327).
>
> "The State of Alaska must recognize the Oregon *modification* of its order under AS 25.25.612." (Emphasis added.)

On appeal from the ensuing judgment, the state asserts that both the administrative order and the trial court's judgment sustaining that order were based on a false major premise, *viz.*, that the 1989 Josephine County order so

"modified" the 1987 Alaska order that the latter precluded any continuing support obligation (and consequent accumulation of arrearages) under the former. The state argues, particularly, that under the controlling law in 1989, the RURESA, a subsequent support order could not "nullify" a preexisting foreign support order "unless otherwise specifically provided by the court," ORS 110.272 (1987), and that the Josephine County court's order did not so "provide." Thus, the state reasons, the Alaska order and the Josephine County order existed concurrently and, while father is entitled to credit towards support due under the Alaska order for amounts paid under the Josephine County order, he remains obligated under the Alaska order.

Father responds that, at the time the Josephine County court entered the 1989 order, the parties and the court intended that that order modify the Alaska order. Father acknowledges that the Josephine County order is "silent as to whether it [was] intended to be a new support obligation or modification of the pre-existing Alaska order." However, he asserts that we may, nevertheless, conclude from extrinsic evidence that the Josephine County order was intended to modify the Alaska order. Father contends, particularly, that ORS 110.271 (1987) "does not require that *the order* contain a specific statement nullifying the initiating state's order" but that the "focus of the statute appears to be upon the general intent of the court, rather than the specific language of the resulting order." (Emphasis in original.)

Before addressing the particular merits of the parties' arguments, it is useful to revisit the purpose and general operation of the RURESA. In addition to the "anti-nullification" provision, ORS 110.272 (1987), three features of that statutory scheme bear on our analysis.

■ First, ORS 110.011 (1987) provided that the purpose of the RURESA, like its predecessor the URESA, was to "improve and extend by reciprocal legislation the *enforcement* of duties of support." (Emphasis added.) Thus, "[t]he act is procedural only, it does not create any duties of family support." *Miskimon v. Miskimon,* 173 Mich App 393, 399, 433 NW2d 419, 422 (1988). *See also Despain v. Despain,* 78 Idaho 185, 190, 300 P2d 500, 503 (1956) (URESA is "an auxiliary or

supplemental remedy for the enforcement of orders of support").

Second, ORS 110.006 (1987) provided that RURESA was to be "so construed as to effectuate its general purpose to make uniform the law of those states which enact it." As described below, the overwhelming majority of jurisdictions that have considered the issue have concluded that, under the RURESA, a subsequent support order issued by a "responding state" does not preclude the continuing validity and accumulation of arrearages under a prior foreign support order unless the latter court specifically so provides. *See generally* Annotation, *Construction and Effect of Provision of Uniform Reciprocal Enforcement Act That No Support Order Shall Supercede Or Nullify Any Other Order*, 31 ALR 4th 347 (1984) (canvassing authority under both URESA and RURESA).

Third, under the RURESA, the provisions for *civil enforcement* of support orders, ORS 110.071 to ORS 110.272 (1987), and for *registration* of foreign support orders, ORS 110.275 to ORS 110.281 (1987), are separate and distinct. *See* ORS 110.275 (1987) ("If the duty of support is based on a foreign support order, the obligee has the additional remedies provided in ORS 110.277 and ORS 110.281."). Without belaboring the procedural details of a long-repealed statutory scheme,[6] the critical fact for our purposes is that the 1988 Alaska "Action Request," which resulted in the 1989 Josephine County order, explicitly sought *enforcement* of the Alaska support order and did not request registration of that order. *See* 170 Or App at 81-82. Thus, the administrative determination that the 1989 Josephine County order "registered" the Alaska order was incorrect, as was its concomitant conclusion that the present request for registration was barred by *res judicata*.

---

[6] Briefly, under the RURESA, the "initiating" jurisdiction (generally the state where the obligee resides) certifies a petition for enforcement of an existing support order to a court of the "responding" jurisdiction (generally the state where the obligor resides). Upon receipt of the petition, if the responding court determines that a duty of support does, in fact, exist, the court may order the obligor to pay support and subject the obligor's property to that order. *See* ORS 110.201(1) (1987). The effect of the responding court's order *vis-à-vis* the original support order—and particularly the operation of ORS 110.272 (1987) with respect to civil enforcement—is the crux of this appeal.

■     The issue thus narrows to whether the Josephine
County court, in acting on the civil enforcement request,
could, and did, so "modify" the 1987 Alaska order as to pre-
clude any continuing support obligation under that order. We
note, at the outset, that there is no question as to the Jose-
phine County court's authority, in responding to a request for
enforcement under the RURESA, to enter a prospective sup-
port order in an amount lower than that specified in the orig-
inal court's order. *See, e.g., Thompson v. Thompson*, 366
NW2d 845, 847 (SD 1985) ("[I]n RURESA actions * * * to
enforce the support provisions of a decree issued by a court of
another state or circuit, the trial court may enter its own pro-
spective support order, raising or lowering the amount of the
support obligation, if the circumstances then and there
before the trial court dictate and warrant such a change.");
*Miskimon*, 173 Mich App at 397, 433 NW2d at 421 ("[A] trial
court, in a responding state, may enter its own prospective
support order which differs in amount from the foreign sup-
port order."). The issue, rather, is whether the latter order
somehow precludes enforcement of the former—or whether,
under the RURESA, the two orders were independently and
concurrently enforceable. The answer to that question lies in
the correct construction and application of ORS 110.272
(1987), which provided:

> "A support order made by a court of this state pursuant
> to this chapter does not nullify and is not nullified by a sup-
> port order made by a court of this state pursuant to any
> other law or by a support order made by a court of any other
> state pursuant to a substantially similar act or any other
> law, regardless of priority of issuance, unless otherwise spe-
> cifically provided by the court. Amounts paid for a particu-
> lar period pursuant to any support order made by the court
> of˙another state shall be credited against the amounts
> accruing or accrued for the same period under any support
> order made by the court of this state."

The statute employs the term "nullify," not "modify."
Nevertheless, from the totality of the statutory text—and
particularly the "credit" mechanism of the statute's second
sentence—it is apparent that, ordinarily, a responding state's
entry of a prospective support order in a different amount
does not affect the continuing validity of the original order.

Rather, amounts paid against one order will be credited against amounts concurrently accruing on the other. That treatment comports with the RURESA's fundamental purpose as an *enforcement* mechanism, *see* ORS 110.011 (1987), as well as with principles of full faith and credit. *See* ORS 110.031 (1987) ("The remedies herein provided are in addition to and not in substitution for any other remedies."); ORS 110.275 to ORS 110.281 (1987) (pertaining to procedures for, and effect of, registration of foreign support order).[7]

■     In that regard, we agree with the overwhelming majority of courts who have considered the same question and whose statutory construction, while not binding,[8] we find

---

[7] No Oregon decision addresses the availability of modification under the RURESA. In *State ex rel Louisiana v. Phillips*, 39 Or App 325, 595 P2d 1276, *on recons* 40 Or App 547, 595 P2d 1276 (1979), a decision under the then-extant *URESA*, this court concluded that a responding court "had authority to modify the decree as to future payment." 40 Or App at 549. *Phillips* is not controlling here for any of three reasons.

First, as noted, *Phillips* was decided under the URESA, not the RURESA. The *Phillips* court relied on the URESA's "anti-suppression" provision, ORS 110.271 (1977), which was repealed and replaced by ORS 110.272 in 1979—and which did not include the latter's "unless otherwise specifically provided" proviso.

Second, at the time *Phillips* was decided, ORS 110.175 (1977) provided, in part:

"When a petitioner who is an obligee * * * seeks relief in this state under this chapter, he submits to the jurisdiction of the responding court in this state as to the responding court's power to set aside, alter or modify any provisions for the payment of future support in the order, decree or judgment which imposed the duty of support upon the obligor."

That provision, which was unique to Oregon and without any counterpart in any of the uniform acts, was repealed upon Oregon's enactment of the RURESA. *See* Or Laws 1979, ch 484, § 47.

Third, *Phillips* purported to rely on *State ex rel Nebraska v. Brooks*, 35 Or App 805, 583 P2d 12 (1978), stating that in *Brooks* we had "concluded [that] a responding state had authority to modify a foreign order of support as to future payments made in the responding state." *Phillips*, 40 Or App at 549. That description of *Brooks* was inaccurate. Indeed, in *Brooks*, we had expressly reserved the issue. 35 Or App at 807-08.

[8] *Accord* ORS 110.006 (1987) (RURESA "uniformity of interpretation" provision). It is, frankly, difficult to assess what role, if any, such a "uniformity" directive properly plays in Oregon's statutory construction. Even putting aside the potential difficulties of prospective delegation, there is the surreal prospect of the first state to consider an issue fixing the law of every other state by virtue of "uniformity." *Cf. GPL Treatment, Ltd. v. Louisiana-Pacific Corp.*, 323 Or 116, 124-26, 914 P2d 682 (1996) (looking to the decisions of other Uniform Commercial Code jurisdictions "[i]n examining the context" of the "merchant's exception," ORS 72.2010(2)); *Marks v. McKenzie High School Fact-Finding Team*, 319 Or 451, 457-63, 878 P2d 417 (1994) (canvassing decisions of other jurisdictions with comparable public records laws, including decisions rendered after Oregon's statute was

to be persuasive. *Miskimon* and *Thompson* are exemplary. In *Miskimon*, the court concluded that a Florida responding court's reduction of a support obligation in response to a RURESA enforcement request did not preclude the accumulation of continuing child support arrearages on the original Michigan dissolution judgment:

> "[A]n initiating state is not bound by the terms of a foreign support order when calculating arrearages due under the original judgment of support.
>
> "[T]he original support order is only affected by the payments credited to it pursuant to the anti-nullification provision. The reason for the credit is to prevent duplication of payment. An obligor is not relieved of his duties under the original order, and he is entitled to credit for only the amounts he is actually paid. Therefore, an arrearage can accumulate if the foreign support order calls for payments which are less than the amount owing under the original order.
>
> "\* \* \* \* \*
>
> "This ruling is not unfair to plaintiff since he could have moved, in the Michigan courts, to decrease his support obligations." 173 Mich App at 397, 433 NW2d at 422-23 (citations omitted).

Similarly, in *Thompson*, the South Dakota Supreme Court concluded that, although a South Dakota trial court could issue a prospective support order in an amount different from the original Wyoming decree, the latter order did not preclude collection of ongoing arrearages under the former:

> "[N]ew support orders do not nullify, modify, or supersede the original support decree, but instead provide an additional, supplementary or cumulative remedy. Amounts paid under one support order are credited against amounts accruing or accrued for the same period under another support order. This latter language necessarily contemplates that two or more support orders may be outstanding and valid at the same time. Thus, 'the authority of the court originally ordering payment is not affected nor is its order

---

enacted, as evincing analysis that is "persuasive as to what the legislature would have intended, had it considered the specific issue").

modified by an order of the court of the responding state fixing another or different sum.' " 366 NW2d at 847-48 (citations omitted) (quoting *Despain*, 78 Idaho at 190, 300 P2d at 503).[9]

Thus, entry of a subsequent RURESA support enforcement order for a reduced amount of support does not automatically or necessarily modify the original support order. Nevertheless, ORS 110.272 (1987) indicated that such modification *could* be effectuated if the responding court "specifically so provides." Here, the Josephine County court's order, while determining that $125 per month "is a reasonable amount of support for [father] to pay," did not even refer to the Alaska order, or to the amount of support fixed under that order, much less purport to modify that order.[10] In that

---

[9] *See also State v. Valdez*, 941 P2d 144, 150 (Alaska 1997) (describing operation of URESA: "Courts have strived to maintain the separate, independent character of URESA procedures like those employed in the present case so that (1) the support obligation can be enforced in a new jurisdiction; (2) the responding court may make its own determination about the needs and abilities of the parties; and (3) the prior order may simultaneously remain in effect."); *In re Marriage of Popenhager*, 99 Cal App 3d 514, 521, 160 Cal Rptr 379, 383 (1979) ("[A] reciprocal support order, like the instant one, which differs in face amount from a prior dissolution action support order but does not expressly mention modification, cannot automatically and after-the-fact, modify the dissolution order; the amount on the face of the reciprocal order merely represents the sum currently enforceable."); *In re Marriage of Kramer*, 253 Ill App 3d 923, 931, 625 NE2d 808, 814-15 (1993), *rev den* 156 Ill 2d 558, 638 NE2d 1116 (1994) ("In the absence of a clear statement of intent to modify the prior support order, the California order should be seen as providing an additional and separate means of enforcing the child support obligation, rather than as modifying the Nebraska decree.") (citing extensive authority); *Banton v. Mathers*, 159 Ind App 634, 642, 309 NE2d 167, 172 (1974) (listing authority); *Howard v. Howard*, 191 So 2d 528, 531 (Miss 1966) (addressing URESA: "[T]he original order of support rendered in the court of the initiating state is unaffected by the orders subsequently rendered in another state under the Uniform Act, except to the extent that payments made pursuant to one must be credited against payments accruing or accrued under the other for the same period or periods."); *Hodgins v. Hodgins*, 814 SW2d 710, 711 (Mo App 1991) (addressing URESA: "A defendant in an URESA action can be required to pay a greater or lesser amount of child support than that required to be paid in an underlying decree from the court having jurisdiction in the dissolution action. Such a variation from the underlying order of support does not act to alter the underlying order.") (Citations omitted.). *See generally* Annotation, 31 ALR 4th 347.

[10] As noted, 170 Or App at 82 n 3, the Josephine County court's order is the only component of the record of the 1989 proceedings that is included in this record. The parties did not include, for example, any transcript of the 1989 proceeding. In all events, in the absence of an "obvious clerical error" that renders the written order "internally inconsistent and ambiguous on its face," *State v. Rood*, 129 Or App 422, 426, 879 P2d 886 (1994), the court's written order controls, and reference to extrinsic evidence of intent is improper. *See Haynes v. Burks*, 290 Or 75, 94, 619 P2d 632

regard, the Josephine County court's order is indistinguishable from those in *Miskimon, Thompson,* and myriad other RURESA and URESA cases. *See* 170 Or App at 89 n 9. Because it did not "specifically provide" for modification of the original Alaska order, the 1989 Josephine County order did not preclude the continuing accumulation of support arrearages on the Alaska order, subject to a credit for amounts paid on the Oregon order.

■ Finally, Oregon's subsequent enactment of the UIFSA did not, and does not, alter the continuing validity of the 1987 Alaska support order. ORS 110.333(2) provides, in part:

> "If a proceeding is brought under ORS 110.303 to 110.452, and two or more child support orders have been issued by tribunals of this state or another state with regard to the same obligor and child, a tribunal of this state shall apply the following rules in determining which order to recognize for purposes of continuing, exclusive jurisdiction:
>
> "\* \* \* \* \*
>
> "(b)   If more than one of the tribunals would have continuing, exclusive jurisdiction under ORS 110.303 to 110.452, an order issued by a tribunal in the current home state of the child controls and must be so recognized, but if an order has not been issued in the current home state of the child, the order most recently issued controls and must be so recognized."

Given the concurrent existence and operation of the Alaska and Oregon orders, and applying the "tie-breaking" principles described in ORS 110.333(2), the Alaska order is controlling because the child's current home state is Alaska. Consequently, the 1987 Alaska support order remains valid and enforceable, and the trial court erred in concluding otherwise.

Reversed and remanded for registration of 1987 Alaska support order.

---

(1980) (Tanzer, J., specially concurring); *State v. Swain/Goldsmith,* 267 Or 527, 530, 517 P2d 684 (1974).