74 P.3d 1149 (2003)
189 Or. App. 162
STATE of Oregon DCS, on behalf of the STATE OF ALASKA, Appellant, and
Patricia G. Wetherell, Obligee,
v.
David L. ANDERSON, Respondent.
001025; A114324
Court of Appeals of Oregon.
Argued and Submitted December 16, 2002.
Decided August 13, 2003.
*1151 Judy C. Lucas, Assistant Attorney General, argued the cause for appellant. With her on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.
Chris W. Dunfield, Corvallis, argued the cause and filed the brief for respondent.
Before LANDAU, Presiding Judge, and ARMSTRONG and BREWER, Judges.
LANDAU, P.J.
This complex and acronym-intensive case involves the enforceability of an Alaska child support order in Oregon. The trial court refused to enforce a 1996 Alaska support order. The court concluded that, although the Alaska order was valid and could be registered in this state, the order could not be enforced because, under the relevant provisions of the Uniform Interstate Family Support Act (UIFSA), ORS 110.303 to 110.452, a 1990 Oregon administrative child support order was controlling. The Division of Child Support of the Oregon Department of Justice (DCS) appeals, arguing that the 1996 Alaska order is enforceable as to arrearages that accrued until the 1990 Oregon order was declared to be controlling. We agree and reverse and remand.

I. FACTUAL BACKGROUND
The facts are uncontested. Father and mother were married in Oregon in the late 1970s. They had two children; their younger child, whose support is at issue in this case, was born in 1983. Father and mother were divorced in Alaska in 1987. The decree of dissolution ordered father to pay $150 per month for each child until, as pertinent here, age 18. The older child turned 18 in 1989. Meanwhile, father returned to Oregon.
In 1990, DCS issued an administrative support order relating to the younger child. The Oregon order was entered as a judgment against father in the Circuit Court of Lincoln County, where father then resided. The order calculated father's "state debt" as $666 and established a child support amount of $74 per month, to begin on November 2, 1990. As of April 2000, father was current as to those obligations.
In February 1994, while mother and the younger child were living in Alaska, mother sought collection of previously unpaid Alaska child support payments for the older child. On June 2, 1994, the Alaska Child Support Enforcement Division (CSED) sent to father in Oregon a "Notice of Liability Under Support Order and Demand for Payment," asserting that, under the 1987 Alaska order, he was liable for $12,883.62 in past due child support, interest, and penalties and $150 per month "for ongoing support." Around the same time, Alaska CSED provided DCS with an audit of father's payments under the 1987 Alaska order, showing accumulated arrearages and interest in the amount of approximately $11,638.
In November 1995, the Alaska district court ordered father to submit an affidavit and documentation concerning his income, for the purpose of calculating his child support obligation. Father apparently did not submit any information directly to the court, but he did submit information to the Lincoln County District Attorney. In April 1996, the district attorney faxed to Alaska CSED a statement of father's earnings, showing that his 1995 gross income was approximately $22,254. On July 11, 1996, Alaska CSED sent to father a "Notice of Proposed Adjustment in Child Support" and a proposed "Consent Order for Modification of Support Information." The notice indicated that, as of July 22, 1996, father's child support arrearages totaled $14,155.54. Based on those arrearages and father's 1995 gross income, the notice proposed an increase in the amount of father's child support to $303 per month. Father apparently did not respond to the notice and proposed consent order, and it apparently was never filed.
On July 15, 1996, based on father's failure to comply with its 1995 order to provide it with documentation of his income, the Alaska district court granted Alaska CSED's motion for sanctions; ordered that father's net income be presumed to be $60,000 per year; and ordered that father's child support be *1152 modified to the amount of $1,000 per month, beginning August 1, 1996.[1]
In 1998, mother and child moved to Oregon. On May 10, 2000, DCS filed in Linn County Circuit Court a request for registration of the July 15, 1996, Alaska child support order. The order was entered in the register as a foreign judgment on May 11, 2000. On the same day, the court provided father with notice of the registration. The notice showed that, as of March 31, 2000, the amount of father's arrearages under the 1996 Alaska order was $39,108 plus interest. The notice also informed father that a registered order is enforceable as of the date of registration; that, if he wished to contest the validity or enforcement of the registered order, he was required to request a hearing within 20 days of the date of the notice; and that failure to contest the registered order's validity or enforcement "will result in confirmation and enforcement of the order and the alleged arrearage."
Father requested a hearing on the ground that the amount stated in the Alaska support order was incorrect. In the hearing, father argued that, at the time DCS sought registration of the 1996 Alaska order, Oregon had "exclusive, continuing jurisdiction" of its own 1990 child support order as provided in ORS 110.327; that the 1990 order therefore was the controlling order for the purpose of ORS 110.333(2)(a); and that, accordingly, the 1996 Alaska order could not be registered. DCS responded that the Alaska order was the controlling order. On April 11, 2001, the trial court entered an order determining that, although the 1996 Alaska order was valid, it could no longer be enforced because the 1990 Oregon order is now the controlling child support order.
DCS moved for reconsideration. It argued that, even if the 1990 Oregon order is the controlling order for the purpose of ORS 110.327 and ORS 110.333, that determination pertains only to prospective enforcement of multiple child support orders and does not affect the enforceability of the 1996 Alaska order as to accumulated arrearages under it. The trial court denied reconsideration.

II. DISPOSITION OF THE MERITS

A. The parties' arguments

On appeal, DCS argues that the trial court erred in denying enforcement of the arrearages that had accumulated under the 1996 Alaska order. As it did below, DCS argues that the controlling order determination relates only to prospective enforcement of a child support order. According to DCS, notwithstanding the issuance of the Oregon administrative support order in 1990, arrearages continued to accrue under, successively, the 1987 and 1996 Alaska orders up until the time that the trial court issued its order declaring that Alaska no longer has continuing, exclusive jurisdiction, that is, the order in contention in this appeal. That order, DCS argues, effectively modified the 1996 Alaska order, and, under ORS 110.327(3)(a), modified support orders continue to be enforceable as to arrearages that have accrued to the time of modification, with, as pertinent here, credit being given against those amounts for payments made under the 1990 Oregon order.
Father argues that the trial court correctly determined that Oregon's 1990 support order is the controlling order for the purpose of ORS 110.327(1) and ORS 110.333 and that, as a matter of law, orders other than a controlling order are unenforceable, either as to ongoing support or as to arrearages.

B. Disposition of the arguments

At issue in this case is the effect of three child support orders: (1) the 1987 Alaska dissolution decree that included the order to pay child support; (2) the 1990 Oregon child support order; and (3) the 1996 Alaska child support order that modified the terms of the 1987 order. We begin with the 1987 Alaska order and the effect of the subsequent 1990 Oregon order and then turn to the effect of *1153 the subsequent 1996 Alaska order on the other two.
The 1987 Alaska decree and the 1990 Oregon support order
As noted, in 1987, the Alaska dissolution decree included an obligation to pay $150 per month child support. Three years later, after father moved to Oregon, DCS issued an administrative support order requiring father to pay $74 per month child support. The question is what effect, if any, the DCS order had on the Alaska order to pay $150 per month.
At the time DCS issued the Oregon support order, the Revised Uniform Reciprocal Enforcement of Support Act (RURESA), ORS 110.005 to 110.291 (1987),[2] was in effect. ORS 110.272 (1987) provided, in part:
"A support order made by a court of this state pursuant to this chapter does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this state."
In State ex rel Leo v. Tuthill, 170 Or.App. 79, 11 P.3d 270 (2000), we addressed the proper interpretation and application of that statute. In that case, an Alaska court in 1987 ordered the father to pay $200 per month child support for the parties' one child. The father later moved to Oregon. In 1989, an Oregon court ordered the father to pay monthly child support in the amount of $125. Over the next eight years, the father paid the $125 per month specified in the Oregon order, not the $200 per month required by the Alaska order. In 1997, the Alaska CSED asked what is now DCS to register and enforce the 1987 Alaska order and arrearages that had accrued thereunder. The father objected to the registration, arguing that the 1987 Alaska support order had been modified and superseded by the 1989 Oregon order. The trial court agreed.
We reversed, concluding that, under ORS 110.272 (1987), "a responding state's entry of a prospective support order in a different amount does not affect the continuing validity of the original order." Tuthill, 170 Or. App. at 86, 11 P.3d 270. We explained that "amounts paid against one order will be credited against amounts concurrently accruing on the other. That treatment comports with the RURESA's fundamental purpose as an enforcement mechanism, as well as with principles of full faith and credit." Id. at 87, 11 P.3d 270 (citations omitted; emphasis in original). Only if the subsequent order actually modifies the earlier orderif the subsequent order "specifically provides" that it is not to have concurrent effectwill the earlier order cease to have concurrent effect. Id. at 89, 11 P.3d 270.
Under Tuthill, the issuance of the 1990 Oregon administrative support order for $74 per month in this case did not affect the continuing validity of the 1987 Alaska support order calling for payment of $150 per month. The 1990 order did not "specifically provide" that it modified the earlier Alaska order. The two orders therefore had concurrent effect. Any payments made under one order are simply to be credited against amounts that continued to accrue under the other. That state of affairs continued until the 1987 Alaska support order actually was modified in 1996.
The 1996 modification of the Alaska support order
Six years after the issuance of the 1990 Oregon administrative support order, an Alaska court issued an order modifying the child support provisions of the original 1987 Alaska dissolution decree, by increasing *1154 father's support obligation to $1,000 per month. The issue is whether, given the existence of the 1990 administrative support order, the Alaska court had authority to modify the earlier Alaska decree.
By the time the Alaska court issued the 1996 support order, both Alaska and Oregon had adopted UIFSA. Section 205 of UIFSA, codified at ORS 110.327, provides that a state that has issued a child support order has "continuing, exclusive jurisdiction" over that order as long as that state remains the residence of the obligor, the individual obligee, or the child or until the parties consent in writing to modification of the order by another state. ORS 110.327(1).
Even assuming for the sake of argument that there is some ambiguity as to whether that "continuing, exclusive jurisdiction" includes authority to modify a previous support order, see PGE v. Bureau of Labor and Industries, 317 Or. 606, 610-12, 859 P.2d 1143 (1993) (resort to legislative history is appropriate if disputed statutory provision is ambiguous), the commentary to the uniform law makes clear that the statute was intended to refer to that authority. See Mallon v. Cudahey, 177 Or.App. 614, 619, 38 P.3d 946 (2001) (resorting to UIFSA commentary as legislative history). According to that commentary, under section 205,
"the issuing tribunal retains continuing, exclusive jurisdiction over a child support order, except in very narrowly defined circumstances. As long as one of the individual parties or the child continues to reside in the issuing state, and as long as the parties do not agree to the contrary, the issuing tribunal has continuing, exclusive jurisdiction over its orderwhich in practical terms means that it may modify its order."

Commentary to Uniform Interstate Family Support Act (1996) (UIFSA Commentary), reprinted in 32 Family LQ 385, 433-34 (1998) (emphasis added). We conclude that the Alaska court had the authority to modify its earlier dissolution decree.
3. The effect of Alaska's loss of continuing, exclusive jurisdiction
Following the entry of the 1996 Alaska order, father was required to pay $1,000 per month child support, notwithstanding the Oregon administrative support order requiring him to pay only $74. Under Tuthill, any amounts paid in satisfaction of the Oregon order are credited against the amount concurrently owed under the Alaska order. In 1998, however, mother and child moved to Oregon. Thus, by the time that DCS attempted to enforce the 1996 Alaska support orderin May 2000neither of the parties nor the child lived in Alaska. As we have noted, an issuing state retains continuing, exclusive jurisdiction over its support order as long as one of the parties or the child continues to reside in that state and as long as the parties do not agree to the contrary. ORS 110.327(1). The ultimate issue in this case is the effect of mother's and child's change of residence on the 1996 Alaska order.
ORS 110.333 provides, in part:
"(2) If a proceeding is brought under this chapter, and two or more child support orders have been issued by tribunals of this state or another state with regard to the same obligor and child, a tribunal of this state shall apply the following rules in determining which order to recognize for purposes of continuing, exclusive jurisdiction:
"(a) If only one of the tribunals would have continuing, exclusive jurisdiction under [UIFSA], the order of that tribunal controls and must be so recognized."
This state has "continuing, exclusive jurisdiction" if, among other things, "this state remains the residence of the obligor, the individual obligee or the child for whose benefit the support order is issued." ORS 110.327(1).
In this case, two or more child support orders have been issued: the 1990 Oregon administrative support order and the 1996 Alaska support order. As between the two states, only one has continuing, exclusive jurisdiction. Alaska no longer claims mother, father, or the child as a resident. All now live in Oregon. Accordingly, under ORS 110.333(2)(a), the 1990 Oregon administrative support order is now the controlling order.
*1155 The question remains what effect that fact has on arrearages that have accrued under the Alaska orders. As we explain below, we have found no provision in UIFSA that speaks directly to that issue. The provision that pertains to controlling orders addresses the effect of a modification of an order from the issuing state, but it says nothing about the effect of a registration of that order that results in a declaration that it is no longer controlling. Nevertheless, provisions of the statute pertaining to registration of foreign child support orders for enforcement purposes state that such orders are generally enforceable. Relevant contextincluding federal child support legislationmakes clear that any contrary interpretation is untenable. And any doubts about the intended construction of UIFSA are eliminated by reference to the commentary to the uniform act, which explains that a registered support order remains enforceable as to arrearages accruing up to the time that another order is declared to be the controlling order.

a. Controlling order provisions
We begin with the controlling order provisions of UIFSA. The first of the controlling order provisions is ORS 110.327, which provides, in part:
"(1) A tribunal of this state issuing a support order consistent with the laws of this state has continuing, exclusive jurisdiction over a child support order:
"(a) As long as this state remains the residence of the obligor, the individual obligee or the child for whose benefit the support order is issued[.]
" * * * * *
"(3) If a child support order of this state is modified by a tribunal of another state pursuant to this chapter or a law substantially similar to this chapter, a tribunal of this state loses its continuing, exclusive jurisdiction with regard to prospective enforcement of the order issued in this state and may only:
"(a) Enforce the order that was modified as to amounts accruing before the modification[.]
"* * * * *
"(4) A tribunal of this state shall recognize the continuing, exclusive jurisdiction of a tribunal of another state that has issued a child support order pursuant to this chapter or a law substantially similar to this chapter."
A second is ORS 110.333, which provides, in part:
"(2) If a proceeding is brought under this chapter, and two or more child support orders have been issued by tribunals of this state or another state with regard to the same obligor and child, a tribunal of this state shall apply the following rules in determining which order to recognize for purposes of continuing, exclusive jurisdiction:
"(a) If only one of the tribunals would have continuing, exclusive jurisdiction under this chapter, the order of that tribunal controls and must be so recognized.
"* * * * *
"(3) If two or more child support orders have been issued for the same obligor and child and if the obligor or the individual obligee resides in this state, a party may request a tribunal of this state to determine which order controls and must be recognized under subsection (2) of this section. The request must be accompanied by a certified copy of every support order in effect. Each requesting party shall give notice of the request to each party whose rights may be affected by the determination.
"(4) The tribunal that issued the controlling order under subsection (1), (2) or (3) of this section is the tribunal that has continuing, exclusive jurisdiction under ORS 110.327."
Thus, as pertinent here, under ORS 110.327(1) and ORS 110.333(2)(a), a tribunal of this state has "continuing, exclusive jurisdiction" over its child support order, and that order is the "controlling order," during such time that this state is the residence of the obligor, the individual obligee, or the child. However, if the child support order is "modified" by a tribunal of another state, the tribunal of this state loses its continuing, exclusive jurisdiction over the order "with regard to prospective enforcement of the order" and *1156 may enforce its order "only * * * as to amounts accruing before the modification." ORS 110.327(3)(a). The latter provision makes clear that, at least when a tribunal of this state loses its continuing, exclusive jurisdiction by reason of modification of its order by a tribunal of another state, the arrearages that have accrued under the order before modification nevertheless remain enforceable by the issuing state.
In addition, we understand the cited provisions to apply equally in the reciprocal circumstances. See ORS 110.327(4) (this state shall recognize the continuing, exclusive jurisdiction of tribunals of other states that have issued child support orders). Accordingly, when a child support order of another state is modified by a tribunal of this state, the other state loses its jurisdiction with regard to prospective enforcement of its order, but retains authority to enforce its order as to arrearages. The modified order in effect supersedes the original order, but for prospective purposes only.
Under UIFSA, however, registration of a child support order for enforcement purposes and registration of an order for modification purposes are separate proceedings that are triggered by different pleadings. See ORS 110.342 (setting out types of proceedings under ORS chapter 110, including proceedings for registration of a child support order of another state for enforcement purposes; proceedings for registration of a child support order of another state for purposes of modification; and providing for commencement of such proceedings by the filing of a petition or a comparable pleading).[3] As we understand the record, DCS did not seek to register the 1996 Alaska order in the Linn County Circuit Court to modify it. Rather, DCS requested registration of the order merely to enforce it.
In short, nothing in ORS 110.327 or ORS 110.333 expressly addresses the consequences, as to enforcement of arrearages, of the registration of an order solely for enforcement purposes, rather than for modification purposes, or of a simultaneous determination by the registering tribunal that another order is the controlling order.

b. Registration provisions
We turn to the registration provisions of UIFSA. ORS 110.405 provides, in part:
"(1) A support order * * * issued by a tribunal of another state may be registered in this state for enforcement.

"(2) A support order * * * of another state may be registered in this state by sending the following documents and information to [DCS] to forward to the registering tribunal * * *:
"* * * * *
"(c) A sworn statement by the party seeking registration or a certified statement by the custodian of the records showing the amount of any arrearage [.]
"* * * * *
"(4) A petition or comparable pleading seeking a remedy that must be affirmatively sought under other laws of this state may be filed at the same time as the request for registration or later. The pleading must specify the grounds for the remedy sought."
(Emphasis added.) The text of ORS 110.405(1) suggests that, at least in the absence of any countervailing circumstance, a registered order of another state is enforceable. In addition, by its terms, ORS 110.405(2)(c) suggests that, at the least, what is enforceable is the "amount of any arrearage."[4]
Next, ORS 110.408 provides:

*1157 "(1) A support order * * * issued in another state is registered when the order is filed in the registering tribunal of this state.
"(2) A registered order issued in another state is enforceable in the same manner and is subject to the same procedures as an order issued by a tribunal of this state.

"(3) Except as otherwise provided in ORS 110.405 to 110.437, a tribunal of this state shall recognize and enforce, but may not modify, a registered order if the issuing tribunal had jurisdiction."[5]
(Emphasis added.) Similarly to ORS 110.405(1), the text of subsection (2) of ORS 110.408 suggests that a registered order is enforceable at least to the extent that orders of this state are enforceable. As previously discussed, under ORS 110.327(3)(a), a child support order of this state is enforceable as to arrearages even after being modified by a tribunal of another state; accordingly, the reciprocal principle applies to a foreign-state child support order that is registered and modified by this state. Also, by its terms, subsection (3) of that section provides that, if a registered foreign-state order was issued by a tribunal having jurisdiction, a tribunal of this state is required to enforce it.
Neither of the quoted subsections, nor any other provision of ORS chapter 110 relating to registration of foreign-state orders, expressly states the effect on enforceability of the registered foreign-state order of a determination by the registering tribunal that another order is the controlling order.[6] Nevertheless, the registration statutes do state generally that a registered order is enforceable as to arrearages. Moreover, neither the controlling order provisions nor the registration provisions of ORS chapter 110 state that a controlling order determination alters that enforceability. The wording of the relevant statutes therefore suggests that a registered foreign-state child support order is enforceable, at least as to arrearages up to the time that a home-state order has been determined to be the controlling order.

c. Other statutory context
UIFSA was enacted largely in response to a number of federal statutes that had been enacted in the 1980s, including two pertinent to this case: the Full Faith and Credit for Child Support Orders Act (FFCCSOA), 28 U.S.C. § 1738B; and the Bradley Amendment, 42 U.S.C. § 666(1)(9). See generally UIFSA Commentary, 32 Family LQ at 394-96. When a statute has been enacted in response to federal legislation, that legislation is relevant in determining the intended meaning of the state enactment. See, e.g., Nichols v. Office of Medical Assistance Programs, 171 Or.App. 255, 258-59, 15 P.3d 578 (2000).
The first federal statute requires each state to "enforce according to its terms a child support order made consistently with this section by a court of another State." 28 U.S.C. § 1738B(a). The statute defines "child support" to include "a payment of *1158 money, continuing support, or arrearages." 28 U.S.C. § 1738B(b) (emphasis added). Oregon has enacted a statute expressly requiring Oregon courts to "recognize" the provisions of the FFCCSOA. ORS 107.135(9)(b).
The second federal statute, 42 U.S.C. § 666, provides that, under penalty of forgoing federal child support services funding, states must enact laws to improve the effectiveness of child support enforcement. As pertinent here, states must have in effect
"[p]rocedures which require that any payment or installment of support under any child support order * * * is (on and after the date it is due)
"(A) a judgment by operation of law, with the full force, effect, and attributes of a judgment of the State, including the ability to be enforced,
"(B) entitled as a judgment to full faith and credit in such State and in any other State, and
"(C) not subject to retroactive modification by such State or by any other State;
"except that such procedures may permit modification with respect to any period during which there is pending a petition for modification, but only from the date that notice of such petition has been given, either directly or through the appropriate agent, to the obligee or (where the obligee is the petitioner) to the obligor."
42 U.S.C. § 666(a)(9).
The upshot of the two federal statutes is that child support payments ripen into final judgments when they become due. Those judgments must be given full force and effect by other states and may not be retroactively modified. In that light, it becomes clear that only one reading of UIFSA is tenable. The declaration that a responding state's support order is controlling can have only prospective effect, leaving any arrearages that have accrued under the issuing state's support order up to that point fully enforceable. Any other reading of the statutecertainly the one that father advanceswould require the responding state (in this case, Oregon) to fail to give full force and effect to final judgments and arrearages that accrued under the terms of a support order of the issuing state (in this case, Alaska).

d. Commentary to the uniform act
Even assuming for the sake of argument that there is some ambiguity in the text of UIFSA as to the effect of the declaration that the 1990 Oregon administrative support order is controlling, the commentary to the uniform act makes clear what its drafters intended. As previously noted, according to the commentary on the provision of the uniform act that is codified at ORS 110.327 (pertaining to continuing, exclusive jurisdiction), a determination that a tribunal of a particular state has continuing, exclusive jurisdiction over its order means, "in practical terms," that the tribunal "may modify its order" and, conversely, that a tribunal of another state that has issued a child support order concerning the same obligor, obligee, and child loses its "jurisdiction" to modify its own order. UIFSA Commentary, 32 Family LQ at 433-35. The commentary to that provision also notes, however, that the order of the tribunal that has lost jurisdiction
"remains valid and enforceable. That order is in effect not only in the issuing state and those states in which the order has been registered, but also may be registered and enforced in additional states even after the issuing state has lost its power to modify its order."

Id. at 435-36 (citations omitted; emphasis added). Finally, the commentary states that "[i]t should * * * be noted that nothing in this section is intended to deprive a tribunal which has lost continuing, exclusive jurisdiction of the power to enforce arrearages that have accrued during the existence of a valid order." Id. at 436.
In addition, the commentary to the provision of the uniform act that is codified at ORS 110.333 notes that the purpose of UIFSA is "the eventual elimination of existing multiple support orders," toward which purpose the provision sets out a "procedure designed to identify a single viable order that will be entitled to prospective enforcement in every UIFSA state," namely, a "priority scheme for recognition and prospective enforcement of a single order among existing *1159 multiple orders regarding the same obligor, obligee, and child." UIFSA Commentary, 32 Family LQ at 440-41 (emphasis added).
Thus, although the commentary to the foregoing UIFSA provisions indicates that only a controlling order may be prospectively enforced, it also suggests that an issuing state retains the power to enforce arrearages that have accumulated under its order notwithstanding the facts that the state has lost continuing, exclusive jurisdiction and that its order therefore is no longer the controlling order.
As to methods of enforcement, the commentary to the registration provision codified at ORS 110.405(1) also is of interest:

"Under the one-order system of UIFSA, only one existing order is to be enforced prospectively (if more than one child support order exists, refer to [ORS 110.333] for resolution of the conflict). Registration of that order in the responding state is the first step to enforcement by a tribunal of that state. * * * [R]egistration for enforcement under UIFSA is the primary method for interstate enforcement of child support. If the prior support order has been validly issued by a tribunal with continuing, exclusive jurisdiction, see [ORS 110.327], only that order is to be prospectively enforced against the obligor in the absence of narrow, strictly-defined fact situations in which an order may be modified. Until that order is modified, however, it is fully enforceable in the responding state."
"Registration should be employed if the purpose is enforcement."
UIFSA Commentary, 32 Family LQ at 485 (emphasis added; citations omitted). That comment confirms that registered orders are enforceable and that, if they are controlling orders, they alone are enforceable prospectively. It also necessarily indicates the converse, that is, that registered orders that are not controlling orders may nevertheless be enforced other than prospectivelythat is, as to arrearages.
Similarly, the commentary to the provision codified at ORS 110.423providing that "confirmation" of an order precludes further contest of the orderstates: "Confirmation of a foreign support order validates both the terms of the order and the asserted arrearages." UIFSA Commentary, 32 Family LQ at 497. That comment also indicates that a registered foreign support order is enforceable as to arrearages.

III. CONCLUSION
In summary, we conclude that UIFSA requires that a registered child support order be enforceable as to arrearages notwithstanding that another order has been determined to be the controlling order. That interpretation of the act is consistent with the general provisions regarding the registration of foreign child support orders, the federal statutes in response to which UIFSA was enacted, and the commentary to the uniform act. Accordingly, the trial court erred in declining to enforce the 1996 Alaska support order in this case as to arrearages that accrued up to the time that it determined that the 1990 Oregon administrative support order is controlling.
Reversed and remanded for entry of judgment against respondent for arrearages that accrued under the 1996 Alaska child support order through March 31, 2001.
NOTES
[1] The record does not disclose why, within a five-day period in July 1996, Alaska CSED sought father's consent to an order for modification of child support in the amount of $303 per month and obtained a separate court order for modification of child support in the amount of $1,000 per month.
[2] RURESA was enacted in 1979, Oregon Laws 1979, chapter 484, as a revision to and replacement for the existing child support enforcement statute, the Uniform Reciprocal Enforcement of Support Act (URESA), which was enacted in 1953. Or Laws 1953, ch 427. RURESA itself was revised and replaced by UIFSA.
[3] See also ORS 110.426 (a party or support enforcement agency seeking to modify a child support order shall register the order in this state pursuant to ORS 110.405, ORS 110.408, and ORS 110.411; a "petition for modification" may be filed at same time as the "request for registration" or at a later time); ORS 110.429 to 110.437 (setting out other requirements for modification of a foreign child support order); UIFSA Commentary, 32 Family LQ at 503-04 (under UIFSA, registration is "divided into distinct subcategories: registration for enforcement, for modification, or both"; the requirements and conditions for modification are "explicit and restrictive").
[4] See also ORS 110.351 (setting out duties and powers of responding tribunal upon receipt of a petition or pleading in a UIFSA proceeding, including authority to enforce a support order and authority to "[d]etermine the amount of any arrearages, and specify a method of payment"); Dept. of Human Services v. Leifester, 721 A.2d 189 (Me.1998) (recognizing that UIFSA authorizes a responding tribunal to determine the amount of any arrearages and specify a payment method); Stone v. Stone, 636 N.W.2d 594 (Minn. App.2001) (noting that UIFSA allows registration of foreign-state order for enforcement, including enforcement of arrearages).
[5] ORS 110.432 sets out requirements for modification by a tribunal of this state of a child support order that has been issued by another state and registered in this state. ORS 110.436 provides that, under specified circumstances, a tribunal of this state may modify a child support order of another state in the proceeding to register the order in this state.
[6] See, e.g., ORS 110.411 (providing that the law of the issuing state governs the payment of arrearages under a registered order); ORS 110.414(2)(c) (providing that a notice of registration must inform the non registering party that failure to contest the validity or enforcement of a registered order "will result in * * * enforcement of the order and the alleged arrearages"); ORS 110.417 (providing for proceeding to challenge registration of order); ORS 110.420 (if the contesting party does not establish a defense to the validity or enforcement of the order, the registering tribunal shall issue an order confirming the order); ORS 110.423 (confirmation of an order precludes further contest of an order with respect to any matter that could have been asserted at the time of registration); see also George v. Bray, 130 N.C.App. 552, 503 S.E.2d 686 (1998) (registering tribunal lacked authority to reduce amount of arrearages stated in registered foreign-state child support order).