Argued and submitted May 20, reversed and remanded with instructions to grant
PacifiCorp's motion to compel arbitration December 29, 2010

JELD-WEN, INC.,
an Oregon corporation,
in its corporate capacity
and as assignee of the interests of the
Geary Family Trust, et al;
and Running Y Resort, Inc.,
an Oregon corporation,
*Plaintiffs-Respondents,*

*v.*

PACIFICORP,
an Oregon corporation,
successor in interest to Pacific Power & Light,
a merged Oregon corporation;
and PacifiCorp Energy,
an assumed business name of PacifiCorp,
*Defendants-Appellants,*

*and*

Ron McGILL,
individually;
Ann McGill,
individually;
McGill Farms, Inc.,
an Oregon corporation;
Richard Geary; Alice Geary Kilham; Edward Geary Kilham;
Nancy Elizabeth Kilham; Susan Geary Boehner;
John I. Yellott, Jr.,
Trustee of the John and Dorothea G. Yellott Trust;
Dorothea G. Yellott,
Trustee of the John and Dorothea G. Yellott Trust;
Edward A. Geary Intervivos Trust,
individually
and dba Caledonia Ranch,
*Defendants.*

Klamath County Circuit Court
0705144CV; A139947

245 P3d 685

Bruce L. Campbell argued the cause for appellants. With him on the briefs was Miller Nash LLP.

Richard N. Sieving argued the cause for respondents. With him on the brief were The Sieving Law Firm, A.P.C., Timothy C. Gerking, and Brophy, Mills, Schmor, Gerking, Brophy & Paradis, LLP.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant PacifiCorp appeals a trial court order denying its motion to compel arbitration of plaintiff Jeld-Wen's claims against PacifiCorp for damages. *See* ORS 36.730 (granting right to appeal). PacifiCorp's and Jeld-Wen's predecessors in interest entered into a stipulation in 1920 (1920 stipulation), which included an agreement to arbitrate any claims for damages. Because Oregon's arbitration act unambiguously applies to arbitration agreements "whenever made," the provisions of the Oregon Uniform Arbitration Act apply to the arbitration agreement in the 1920 stipulation. Under that uniform act, the agreement is enforceable,[1] and the trial court erred in denying PacifiCorp's motion to compel arbitration. We reverse and remand.

We review the trial court's order denying a motion to compel arbitration for errors of law. *Wilbur-Ellis Co. v. Hawkins*, 155 Or App 554, 556, 964 P2d 291 (1998).

The relevant facts are not in dispute. In 1919, Jeld-Wen's predecessors in interest filed a suit in equity to enjoin PacifiCorp's predecessor in interest from maintaining a dam. In 1920, the parties settled the dispute by a stipulation. The stipulation obligated PacifiCorp's predecessor in interest to maintain and protect certain land. In addition, the 1920 stipulation required PacifiCorp's predecessor in interest to hold the landowners harmless from any damage cause by the dikes, levees, and lands. Most important to this dispute, the 1920 stipulation also contained an arbitration clause. The arbitration clause provides, in part:

> "Any question upon which the parties cannot agree arising between the parties hereto under this stipulation, or the rights or obligations of said parties including claims for damages and liability therefor, shall be adjusted and determined by an arbitration board * * *; that the findings of said board of arbitration shall be final and conclusive upon the parties; that the parties hereby waive all rights of suit or action or judicial review relative to damages alleged to

---

[1] The parties do not dispute that, if the uniform act applies, the court was required to compel arbitration.

128

have been suffered or to the findings of said board, and further agree to conform promptly to the findings of said board and to abide thereby * * *."

In June 2006, the Geary Dike ruptured and failed, flooding approximately 2,200 acres of land now owned by Jeld-Wen. Jeld-Wen filed a complaint for damages against PacifiCorp and other defendants. PacifiCorp filed a motion to compel arbitration, based on the arbitration agreement in the 1920 stipulation entered into by the parties' predecessors in interest.[2] Jeld-Wen opposed the motion to arbitrate, arguing that the arbitration agreement in the 1920 stipulation was not enforceable under either the Federal Arbitration Act or the Oregon Uniform Arbitration Act (Oregon Act). Jeld-Wen also asserted that the arbitration agreement was not enforceable under Oregon common law.

The trial court initially granted PacifiCorp's motion to compel arbitration. In a letter opinion, the court stated that, although neither the FAA nor the Oregon Act governed the 1920 stipulation, the arbitration agreement was enforceable under common law at the time the parties entered into the 1920 stipulation. But on reconsideration, the court vacated its earlier order and denied PacifiCorp's motion to compel arbitration.

■  PacifiCorp appeals. PacifiCorp argues that the court should have compelled arbitration under the Oregon Act, because Oregon Laws 2003, chapter 598, section 3(3), *compiled as a note after* ORS 36.600 (2003) unambiguously applies to arbitration agreements "whenever made," and thus applies to the 1920 stipulation. Jeld-Wen responds that, although the language of the Oregon Act appears to unambiguously apply to all arbitration agreements, the commentary to the Uniform Law Commission's Revised Uniform Arbitration Act (Revised Act) demonstrates a latent ambiguity in the statute. Relying on that commentary, Jeld-Wen argues that the Oregon Act does not apply to the 1920 stipulation. For the reasons that follow, we agree with PacifiCorp.

---

[2] The 1920 stipulation applies to the parties who entered into it and "also their heirs, assigns, contractees, grantees and successors in interest[.]"

Whether the Oregon Act applies to the 1920 stipulation is a question of statutory interpretation. We first examine the text of the statute in context and in light of any pertinent legislative history to determine the legislature's intent. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). If the intent of the legislature remains unclear, we may resort to general maxims of statutory construction. *Id.* at 172.

The Oregon legislature adopted portions of the Revised Act as the Oregon Act in 2003. Or Laws 2003, ch 598. In section three, the Oregon Act provides that, "[o]n or after September 1, 2004, sections 1 to 30 of this Act govern an agreement to arbitrate whenever made." Or Laws 2003, ch 598, § 3(3), *compiled as a note after* ORS 36.600 (2003).

PacifiCorp relies on the plain language of section three to contend that the Oregon Act governs the 1920 stipulation because it applies to "an agreement to arbitrate *whenever made*." (Emphasis added.) Jeld-Wen asserts that the commentary to the Revised Act shows that this seemingly unambiguous language contains a latent ambiguity.

■     Commentary to a uniform law adopted in Oregon serves as legislative history. *See State of Oregon DCS v. Anderson*, 189 Or App 162, 178-80, 74 P3d 1149, *rev den*, 336 Or 92 (2003) (citing commentary to a uniform act to clarify the intent of the drafters). In *Gaines*, 346 Or at 172, the Oregon Supreme Court stated,

> "Legislative history may be used to confirm seemingly plain meaning and even to illuminate it; a party also may use legislative history to attempt to convince a court that superficially clear language actually is not so plain at all—that is, that there is a kind of latent ambiguity in the statute."

Thus, we consider the comments in the Revised Act to determine whether there is a latent ambiguity in Oregon Laws 2003, chapter 598, section 3, which derived from that uniform act.

The crux of Jeld-Wen's argument is that, because the comments in the Revised Act provide that it replaces the former Uniform Arbitration Act, the provisions of the Revised Act do not apply to arbitration agreements created

before the former uniform arbitration act or comparable state law. Comment one to the Revised Act states, "Section 3(c) establishes a certain date when all arbitration agreements, whether entered into before or after the effective date of the [Revised Act], *will be governed by the [Revised Act] rather than the [Uniform Arbitration Act].*" Revised Uniform Arbitration Act § 3 comment 1, 7 ULA Pt 1A 16 (2000). (Emphasis added.) Jeld-Wen relies on this language to argue that the Revised Act was intended to replace two things: (1) the former uniform arbitration act and (2) comparable state law. Oregon never adopted the former uniform arbitration act; rather, the Oregon legislature enacted its own arbitration statute in 1925. Or Laws 1925, ch 186. Putting this all together, Jeld-Wen contends that, in adopting the Revised Act, the Oregon Act replaced the 1925 statute, but it does not control the 1920 stipulation, which predates the 1925 statute. While Jeld-Wen constructs an interesting and complex argument, we disagree with the conclusion Jeld-Wen reaches.

The rationale in the commentary to the Revised Act demonstrates that the intent of the drafters was to create one set of rules for arbitration agreements. The drafters also commented that, if the law was applicable only to agreements entered into after the effective date, "such a section would cause two sets of rules to develop for arbitration agreements under state arbitration law: one for agreements under the [Uniform Arbitration Act] and one for agreements under the [Revised Act]." Revised Act § 3 comment 2, 7 ULA Pt 1A 16. Although the drafters did not mention state laws in effect before the Uniform Arbitration Act, the same rationale applies to them. Following Jeld-Wen's argument to its logical conclusion would create two sets of rules under state arbitration law: one for agreements under the Oregon Act and one for agreements entered into before the 1925 arbitration statute. That would go against the stated purpose of the drafters. Accordingly, we conclude that the commentary to the Revised Act does not create a latent ambiguity, but instead supports the unambiguous language of Oregon Laws 2003, chapter 598, section 3(3): the provisions of the Oregon Act govern an agreement to arbitrate "whenever made," including the 1920 stipulation.

The Supreme Court's reasoning in *Snider v. Production Chemical Manufacturing, Inc.*, 348 Or 257, 230 P3d 1 (2010), and this court's reasoning in *Martin v. Comcast of California*, 209 Or App 82, 146 P3d 380 (2006), support our conclusion. In *Snider*, 348 Or at 263, the Oregon Supreme Court stated, without qualification, "Beginning on September 1, 2004, the 2003 arbitration act governs all agreements to arbitrate without regard to when they were made." And in *Martin*, 209 Or App at 88, we said, "In short, plaintiffs point to nothing in the text of the Act to indicate that it does not mean what it says: that, beginning on September 1, 2004, the Act applies to all arbitration agreements." Although neither *Snider* nor *Martin* addressed the application of Oregon Laws 2003, chapter 598, section 3(3) to arbitration agreements created before 1925, both of those cases make the point that the Oregon Act governs arbitration agreements whenever made.[3]

We conclude that, under the plain language of Oregon Laws 2003, chapter 598, section 3(3), the Oregon Act governs arbitration agreements regardless of when they were made, including the arbitration provision in the 1920 stipulation. Accordingly, the trial court erred in denying PacifiCorp's motion to compel arbitration.

Reversed and remanded with instructions to grant PacifiCorp's motion to compel arbitration.

[3] Because we conclude that the Oregon Act governs the arbitration agreement in the 1920 stipulation, we do not reach PacifiCorp's alternative contention that the arbitration agreement in the 1920 stipulation would be enforceable under common law.