Argued and submitted November 29, 2011, affirmed February 13, 2013

Robert M. UNDERWOOD
and Sherry Diane Underwood,
*Petitioners-Respondents,*
*and*
Crystal D. MALLORY,
nka Crystal D. Scott,
*Respondent-Appellant.*

Josephine County Circuit Court
04DR0876; A144622

297 P3d 508

Joan-Marie Michelsen argued the cause for appellant. With her on the briefs was The Oregon Law Center.

Inge D. Wells, Senior Assistant Attorney General, argued the cause *amicus curiae* for the State of Oregon. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

No appearance for respondents.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

HASELTON, C. J.

## HASELTON, C. J.

Mother appeals a denial of her motion to modify an award of custody of her child, M, from her father and stepmother (grandparents) to her. She asserts that the trial court erroneously applied ORS 109.119(2)(c) to this proceeding or, alternatively, if the court properly applied ORS 109.119(2)(c), that statute is unconstitutional as applied to this circumstance.[1] She further argues that the

---

[1] ORS 109.119 provides, in part:

"(1) Except as otherwise provided in subsection (9) of this section [pertaining to proceedings under ORS chapter 419B], any person, including but not limited to a related or nonrelated foster parent, stepparent, grandparent or relative by blood or marriage, who has established emotional ties creating a child-parent relationship or an ongoing personal relationship with a child may petition or file a motion for intervention with the court having jurisdiction over the custody, placement or guardianship of that child, or if no such proceedings are pending, may petition the court for the county in which the child resides, for an order providing for relief under subsection (3) of this section.

"(2)(a) In any proceeding under this section, there is a presumption that the legal parent acts in the best interest of the child.

"(b) In an order granting relief under this section, the court shall include findings of fact supporting the rebuttal of the presumption described in paragraph (a) of this subsection.

"(c) The presumption described in paragraph (a) of this subsection does not apply in a proceeding to modify an order granting relief under this section.

"(3)(a) If the court determines that a child-parent relationship exists and if the court determines that the presumption described in subsection (2)(a) of this section has been rebutted by a preponderance of the evidence, the court shall grant custody, guardianship, right of visitation or other right to the person having the child-parent relationship, if to do so is in the best interest of the child. The court may determine temporary custody of the child or temporary visitation rights under this paragraph pending a final order.

"* * * * *

"(4)(b) In deciding whether the presumption described in subsection (2)(a) of this section has been rebutted and whether to award custody, guardianship or other rights over the objection of the legal parent, the court may consider factors including, but not limited to, the following, which may be shown by the evidence:

"(A) The legal parent is unwilling or unable to care adequately for the child;

"(B) The petitioner or intervenor is or recently has been the child's primary caretaker;

"(C) Circumstances detrimental to the child exist if relief is denied;

"(D) The legal parent has fostered, encouraged or consented to the relationship between the child and the petitioner or intervenor; or

"(E) The legal parent has unreasonably denied or limited contact between the child and the petitioner or intervenor."

trial court erred in requiring her to demonstrate that a change of circumstance had occurred and that an award of custody to her was in the child's best interests, or that, if the court properly required such a showing, it nonetheless erred in concluding that she had not demonstrated a change in circumstances and that a change in custody was not in M's best interests. As explained below, we conclude that the majority of mother's arguments either partake of invited error or are unpreserved, and that, with respect to the properly preserved contentions, the trial court did not err in denying mother's motion to modify. Accordingly, we affirm.

Mother asks this court to exercise discretion to review *de novo*. ORS 19.415(3)(b). We exercise our discretion to review *de novo* only in exceptional cases. ORAP 5.40(8). Mother asserts that we should do so here because the trial court did not make sufficient factual findings on the pertinent legal issues. As explained below, however, the trial court's lack of findings pertaining to the legal issues mother argues on appeal is not surprising, given that mother failed to preserve those arguments. Moreover, the trial court did make sufficient factual findings on those issues that were raised for its consideration. Given those circumstances, we decline to engage in *de novo* review. Instead, we review for errors of law and, where the trial court did not make specific factual findings but there is evidence to support more than one legal conclusion, we presume the court found the facts in a manner consistent with its ultimate conclusion. *State v. S. T. S.*, 236 Or App 646, 655, 238 P3d 53 (2010).

M was born in November of 2003. Mother is M's biological mother; no legal paternity has been established. M has resided primarily with grandparents since he was two weeks old. In December 2003, mother signed a document stating that she was

"signing over full and permanent custody of my son [M] born November 30, 2003, to my parents Robert M. Underwood and S. Diane Underwood. With the intention that they legally adopt [M]. I also in doing this authorize them to make any decisions concerning his health and welfare until said adoption is final."

In May 2004, mother drove from Utah to grandparent's home in Grants Pass and took M. However, she returned M to grandparents after approximately a month because M was irritable, crying a lot, and having stomach problems, and mother was having difficulties dealing with him as well as her other children. Since that time, M has remained in the care of his grandparents.

In September 2004, grandparents, acting *pro se*, filed a petition in the trial court entitled "Petition for Custody and Parenting Time under ORS 109.103 and Child Support." That petition contained allegations pertinent to a determination that the child was within the court's jurisdiction; it also contained general allegations pertinent to ORS 109.119, *viz.*, that grandparents had a child-parent relationship with M, that mother was unable or unwilling to care adequately for M, that petitioners were M's primary caretakers, that circumstances detrimental to M existed if relief was denied, and that mother had consented to the relationship between M and grandparents.[2] Grandparents also submitted to the court a parenting plan that set forth the terms of mother's visitation with M.[3] Mother, who was then living in Utah, was served with the petition but did not appear. Grandparents sought entry of a default judgment, and the court then entered a "general decree of custody" that awarded custody of M to grandparents and implemented the parenting plan. The "general decree of custody" included no factual findings and cited no statutory authority for any of its provisions.

At the time of the 2004 decree, mother, who lived in Utah with a number of her other children, was unable to take care of M. The Utah Division of Child and Family Services obtained jurisdiction over several of her other

---

[2] Although that filing did make reference to ORS 109.119 and some of the criteria in that statute, grandparents did not seek findings pursuant to ORS 109.119(2)(b) that they had rebutted the presumption that mother is a fit parent, nor was the court on notice that any such findings should have been made in its default order granting custody to grandparents, given the provisions of ORS 109.119(4)(b) that such findings concerning the rebuttal of the presumption are to be made in situation where the court is awarding "custody, guardianship or other rights *over the objection of the legal parent.*" (Emphasis added.)

[3] The title of the petition erroneously suggested that child support was an issue.

children and, in 2007, after receiving a 30-day jail sentence for violation of a court order, mother fled from Utah with a number of her children.

In November 2007, mother moved in with grandparents in Grants Pass and subsequently moved to several other locations in Oregon. In mid-2009, mother returned briefly to Utah to serve her jail sentence, and the five children who had been residing with her were placed in temporary foster care. After mother's return from Utah in September 2009, she regained custody of those five children.

From the time when mother returned to Oregon in 2007 until mid-2009, mother and grandparents had a good relationship, and M visited mother and his siblings regularly. At some point in the summer of 2009, mother and grandparents had a falling-out that resulted in grandparents and M no longer having regular contact with mother and M's siblings. Mother initially sought to enforce visitation pursuant to the parenting plan for M that had been implemented in 2004, but ultimately decided to seek custody of M instead.

Mother, acting *pro se*, filed a motion seeking modification of the 2004 judgment to grant her sole custody of M and to allow grandparents visitation with M at mother's sole discretion. Mother cited as authority for her motion ORS 107.135 and ORS 109.103. Mother's motion included no reference to ORS 109.119. Grandparents contended—again without any reference to ORS 109.119—that mother had failed to satisfy the requisites for a modification of custody under ORS 107.135, *viz.*, that mother had not demonstrated a change in circumstances and that a change in custody was in M's best interests. With the dispute so framed, the matter proceeded to hearing.

At the time of hearing, mother had eight living children, five of whom resided with her, and another child on the way.[4] Mother did not work, and she received public assistance. Mother presented evidence that the children

---

[4] Evidence at trial indicated that mother had not seen her oldest child since he was three months old and did not know his whereabouts. Another child apparently had been placed with her biological father in Utah. Mother had two other children who had died, but the circumstances of their deaths are not included in this record.

that resided with her did well in school, were adequately fed and groomed, and exhibited no behavior problems. She planned to take a parenting class and to attend community college at some point in the future.

Grandparents, for their part, proffered evidence that they have taken good care of M, have met his medical needs, and generally have provided a nurturing environment. Grandparents also presented evidence that, in the months before the hearing, M became aware that mother was attempting to gain custody of him and developed symptoms of anger and anxiety, including bed-wetting. Grandparents took him to a therapist, who testified at the hearing that M had expressed a desire to see mother and his siblings, but that he did not want to live with her. The therapist testified that she was continuing to work with M, whose symptoms were improving.

Further, grandparents presented evidence that mother sometimes left her younger children in the care of her older children—the oldest being approximately 10 years old at the time. Grandparents also presented evidence that mother had been in an intermittent relationship, for a significant amount of time, with an abusive partner who is the father of several of her children, that domestic disputes occurred in her children's presence, and that the abusive partner had used drugs in her home. Although mother testified that her abusive partner had left the state several months earlier, evidence indicated that she remained in contact with him and was pregnant by him.

The trial court, tracking the requirements of ORS 107.135, ruled that mother had not met her burden of proving the requisites for modification:

> "You haven't met your burden of proof to modify custody. The two elements are first that there is a change of circumstances. * * * I haven't heard the legal standard that would allow me to say yes there has been a change of circumstances between the time of filing this motion, going back to December 10, 2004. And if I had found that then I'd have to get over and then go to the second question, which is what is in the best interest of [M]."

In determining that mother had not demonstrated any sufficient "change in circumstances," the court noted, in particular, a lack of detailed information about the circumstances that had existed when the original judgment was entered in 2004. Further, with respect to M's best interests, the court stated that it was "very concerned" about mother's relationship with an abusive partner, the history of domestic violence, and mother having continued to have contact with the abusive partner in violation of an order of the Utah court. The court also expressed concern about mother's history of unstable living situations. Given those circumstances, the court determined that a change in custody was not in M's best interests at that point in time.

At no point during the proceeding before the trial court did either party refer to ORS 109.119. Nor did the trial court refer to that provision in considering and ruling on mother's modification motion. Rather, the matter was presented exclusively as a classic ORS 107.135 dispute. In particular, mother argued in her opening statements to the court about M's best interests, and grandparents' counsel argued about whether there had been a change in circumstances and whether a modification of custody would be in M's best interests.

On appeal, mother first argues that the trial court *"apparently"* erred in applying ORS 109.119(2)(c) and construing it to deprive mother of the presumption that she acts in the best interest of her child. (Emphasis added.) With respect, the trial court did no such thing. As noted, no one asked the trial court to apply that statute, nor consequently did it purport to do so. Further, any purported error in that regard is not only unpreserved but, indeed, was invited.

As described above, when mother moved to modify custody, she cited as authority for her motion ORS 107.135 and ORS 109.103. ORS 107.135(1) provides, in pertinent part:

> "The court may at any time after a judgment of annulment or dissolution of marriage or of separation is granted, upon the motion of either party * * *

"(a)  Set aside, alter or modify any portion of the judgment that provides * * * for the custody, parenting time, visitation, support and welfare of the minor children."

*See Boldt and Boldt*, 344 Or 1, 9, 176 P3d 388, *cert den*, 555 US 814 (2008) (a parent seeking to modify custody under ORS 107.135 "must show that (1) after the original judgment or the last order affecting custody, circumstances relevant to the capacity of either the moving party or the legal custodian to take care of the child properly have changed, and (2) considering the asserted change of circumstances in the context of all relevant evidence, it would be in the child's best interests to change custody from the legal custodian to the moving party").

ORS 109.103(1), for its part, provides, in part:

"If a child is born to an unmarried woman and paternity has been established under ORS 109.070, or if a child is born to a married woman by a man other than her husband and the man's paternity has been established under ORS 109.070, either parent may initiate a civil proceeding to determine the custody or support of, or parenting time with, the child. * * * The parents have the same rights and responsibilities regarding the custody and support of, and parenting time with, their child that married or divorced parents would have, and the provisions of ORS 107.093 to 107.449 that relate to custody, support and parenting time * * * apply to the proceeding."

As pertinent here, ORS 109.103 applies only as between unmarried biological parents. Thus, the initial award of custody to grandparents in this case could not have occurred pursuant to that statute—and it was inapposite to any modification.[5]

In sum, the trial court was invited—albeit erroneously—to decide the case under the standards set forth in ORS 107.135 pertaining to changes in custody. It did so. Consequently, any purported error in applying ORS 107.135 without reference to ORS 109.119, including the presumption and rebuttal provisions of ORS 109.119(2)(a), (3)(a) and (4)(a), was invited—and hence unreviewable—

---

[5] That is so notwithstanding grandparents' reference to that statute in their 2004 filing. *See* 255 Or App at 187.

and any purported error in applying ORS 109.119 was nonexistent. *See, e.g., State v. Kammeyer*, 226 Or App 210, 214, 203 P3d 274, *rev den,* 346 Or 590 (2009) (a party who is actively instrumental in bringing about an alleged error cannot obtain reversal on appeal based on that error).

Given that reality, we simply are unable to reach the complex and difficult question that mother poses on appeal as to whether the provision of ORS 109.119(2)(c) that removes the presumption from modification proceedings would be unconstitutional as applied to a circumstance where no determination as to parental unfitness was made at the time the court granted custody to grandparents. To reach that question on this record would be improper. The trial court was not called upon to decide that issue in the first instance and, had it been, might well have taken steps to avoid any statutory or constitutional problems. *See Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008) ("Preservation gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal."). It also would not be fair to grandparents, who retained counsel to defend an action brought by mother pursuant to ORS 107.135 and tried the case based on that statute. *See State v. Smith*, 252 Or App 707, 714, 288 P3d 974 (2012) (preservation requirement is designed to "ensure fairness to the opposing party by avoiding surprise and allowing that party to address all issues raised"). Accordingly, we do not reach mother's first and second assignments of error, which concern whether or how ORS 109.119 should apply to a case such as this.[6]

In her remaining assignment of error, mother asserts that, even applying the ORS 107.135 criteria, the

---

[6] Mother also asserts, although she fails to cite the record, that she preserved an argument under the Fourteenth Amendment to the United States Constitution that ORS 109.119(2)(c) is unconstitutional as applied in this case. We note that mother, in the course of her testimony at the hearing, testified that she had read about *Troxel v. Granville,* 530 US 57, 120 S Ct 2054, 147 L Ed 2d 49 (2000), and that she believed she had a right to custody of her child as long as she was not unfit. Given the manner in which the parties mutually framed the custody dispute for the trial court's determination, that incidental reference to *Troxel* during mother's testimony was insufficient to put the court on notice of the arguments she now advances on appeal.

trial court erred in failing to find that mother had demonstrated a change in circumstances, and in failing to find that a change of custody would be in M's best interest. Specifically, mother asserts that, at the time grandparents gained custody, mother lacked the financial ability to care for him and that she has demonstrated that she currently has the ability to care for him and for her other children. As the trial court noted, there is not extensive evidence in the record about mother's circumstances at and around the time grandparents began to care for M. *See Boldt*, 344 Or at 9 (the person seeking modification of custody must show that, "after the original judgment or the last order affecting custody, circumstances relevant to the capacity of either the moving party or the legal custodian to take care of the child properly have changed"). What evidence there is suggests that mother had problems beyond financial instability— that she had trouble taking care of M because she was not able to cope with him in addition to her other children. Since that time, mother has had several more children. To the extent that that shows a change in circumstance, it is not a change in circumstance that would appear to place mother in a significantly better position to care for M.

In all events, the trial court went on to determine that a change of custody would not be in M's best interests. In particular, it cited mother's history of unstable living situations, her intermittent relationship with an abusive partner, and her history of problems abiding by orders of the Utah courts concerning her children. We review a trial court's determination of the best interests of a child for abuse of discretion. *See Sjomeling v. Lasser*, 251 Or App 172, 187, 285 P3d 1116, *rev den*, 353 Or 103 (2012). Given the parties' reliance on ORS 107.135 as the basis for this modification proceeding, the court, in evaluating "best interests," was to consider the factors set forth in ORS 107.137(1), which include, among other things, the emotional ties between the child and family members, the desirability of continuing relationships, the preference for the primary caregiver, and the various parties' willingness to facilitate and encourage continuing relationships. Here, the record amply supports the trial court's discretionary determination. We note, for example and without limitation, that the evidence was

undisputed that grandparents are, and always have been, M's primary caregivers and have acted in that capacity since November 2003, and that grandparents presented evidence that, until their recent falling-out with mother, they had facilitated ongoing relationships between M, his siblings, and mother, and are willing to facilitate those relationships in the future.

The trial court did not err in denying mother's motion for change of custody under these circumstances.

Affirmed.