Argued and submitted October 17, 2013, affirmed February 12, 2014

In the Matter of

Loren S. CAMPBELL,
*Petitioner-Respondent,*

*v.*

Angela M. TARDIO,
nka Angela M. Owen,
*Respondent-Appellant.*

Jefferson County Circuit Court
11DS0017; A150557

323 P3d 317

Steven C. Burke argued the cause for appellant. With him on the briefs was Case & Dusterhoff, LLP.

Timothy R. Gassner argued the cause for respondent. With him on the brief was Glenn, Reeder, Gassner & Whiting, LLP.

Before Duncan, Presiding Judge, DeVore, Judge, and Schuman, Senior Judge.*

DEVORE, J.

_____

* DeVore, J., *vice* Wollheim, J.

**DEVORE, J.**

Mother challenges the trial court's exercise of jurisdiction and its award of custody to father. We affirm, finding jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), ORS 109.701 to 109.771, and no error in the award of custody.

Those facts that determine jurisdiction are undisputed. The parties' child was born on July 19, 2005, while they lived in Oregon. They had an "on-again, off-again" relationship and did not marry. In late February 2006, mother and father stipulated to an Oregon judgment providing father with sole custody of the child and assuring mother visitation under a parenting plan. The judgment declared that the child had lived continuously in Jefferson County from his birth, seven months earlier. It recited that father and the child lived in Metolius, Oregon, and mother lived in Vancouver, Washington.

In the following years, the parties lived together at times, and the respective responsibility for child care fluctuated. The child's paternal grandmother periodically provided care. After mother picked up the child for a weekend visit, mother phoned the grandmother on November 1, 2009, to say that she did not intend to return the child. In hope of reconciliation, father acquiesced in mother's request to terminate the custody order. On November 30, 2009, the parties signed a stipulated motion for an order that announced that the earlier judgment on custody and visitation was "dismissed." The parties did not reconcile. Instead, mother and the child moved from Washington to California and then to North Dakota.

On March 9, 2011, father filed a petition in Jefferson County Circuit Court to reestablish custody with him. Mother responded with a counterclaim for custody and, later, with a motion to change venue. She relied on ORS 14.110, urging that venue in North Dakota would be more convenient for witnesses and the parties. The trial court denied the motion and entered judgment awarding custody to father.

On appeal, mother first assigns error to the denial of her motion for a change of venue. She contends that it should have "been construed as a motion to dismiss" for the reason that "the trial court did not have proper subject matter jurisdiction" under the UCCJEA. Father contends that any dispute of "personal jurisdiction" was waived.

We review matters of jurisdiction for errors of law. The court's authority to determine custody under the UCCJEA is a question of subject matter jurisdiction. *See Daly and Daly*, 228 Or App 134, 139-40, 206 P3d 1189 (2009) (involving jurisdiction to modify a California support award). Subject matter jurisdiction cannot be waived and can be raised at any stage of the proceedings. *Id.* at 139. Although not raised before, the question must be addressed now. Specifically, that question is whether the trial court lacked subject matter jurisdiction under the UCCJEA when it entered the judgment that is before us on appeal.

The UCCJEA provides rules for determining jurisdiction in custody cases involving multiple jurisdictions. In particular, ORS 109.741(1), provides that, excepting temporary emergency jurisdiction, which is not relevant here,

"*** a court of this state has jurisdiction to make an initial child custody determination only if:

"(a)   This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

"(b)   A court of another state does not have jurisdiction under subsection (1)(a) of this section, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under ORS 109.761 [inconvenient forum] or 109.764 [jurisdiction declined by reason of conduct], and:

"(A)   The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

"(B) Substantial evidence is available in this state concerning the child's care, protection, training and personal relationships;

"(c) All courts having jurisdiction under subsection (1)(a) or (b) of this section have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under ORS 109.761 or 109.764; or

"(d) No court of any other state would have jurisdiction under the criteria specified in subsection (1)(a), (b) or (c) of this section."

Here, mother and father proceed from the mistaken premise that the child has no "home state" within the meaning of the UCCJEA.[1] They look to the circumstances about the time that the more recent proceeding was filed on March 9, 2011, and overlook the stipulated judgment on custody entered in late February 2006. Mother explains that the "prior judgment on custody had been vacated, which nullified [the] proceeding." The parties, however, had not filed a motion to set aside the original judgment based on a lack of jurisdiction, fraud, or other such grounds. *See* ORCP 71 (bases upon which to set aside a judgment). Instead, father had filed a supporting affidavit that recounted that,

"Since the time of the entry of that Judgment I have renewed the relationship with the Respondent and we are once again cohabitating and exercising equal amounts of parenting time with the minor child. I'm seeking to dismiss the Stipulated Judgment for Custody and Parenting Time so that the Respondent and I will exercise joint custody over the minor child."

The 2009 order, which "dismissed" the 2006 judgment, terminated the custody award, but it did not nullify the prior judgment *ab initio*. Thus, the prior judgment cannot be ignored. That judgment recognized that Oregon had been the home state of the child for seven months from his birth through the time of the judgment.

---

[1] Subsection 7 of ORS 109.704 defines the term "home state" to mean "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months before the commencement of a child custody proceeding."

In light of that fact, the operative statute in this case is ORS 109.744, the provision of the UCCJEA concerning continuing jurisdiction. That statute provides:

"(1)   Except as otherwise provided in ORS 109.751, a court of this state that has made a child custody determination consistent with ORS 109.741 or 109.747 has exclusive, continuing jurisdiction over the determination until:

"(a)   A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training and personal relationships; or

"(b)   A court of this state or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this state.

"(2)   A court of this state that has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if the court has jurisdiction to make an initial determination under ORS 109.741."

The 2006 judgment was a custody determination under ORS 109.741. Therefore, the trial court had continuing jurisdiction until a court of this or another state made findings contrary to continuing jurisdiction. Although the proper place in which to develop the facts and seek findings is in the trial court, not here, we note those facts that were before the trial court when it exercised jurisdiction. At the time the petition was filed, the child had not lived in California for six months and had not yet lived in North Dakota at all. No proceeding had been filed in Washington, and no Washington court had made any findings adverse to Oregon jurisdiction. Father still lived in Oregon. The child and father had a significant connection with Oregon.[2] It appears that substantial evidence existed in Oregon about the child's care, protection, training, and personal relationships insofar as,

---

[2] This case is distinguishable from cases involving children who never lived in Oregon or who only had lived in the state relatively briefly at the time of trial. *See, e.g., Medill and Medill,* 179 Or App 630, 642, 40 P3d 1087 (2002) (children had no significant connection to Oregon); *State ex rel State of Washington v. Bue,* 117 Or App 477, 480, 844 P2d 278 (1992) (only limited evidence of the children's care, protection, training, or personal relationships in Oregon).

at the hearing, both mother and father offered documents, photographs, and witness testimony about the child's day care, medical care, and relationships. *See Killam and Heald,* 109 Or App 1, 4-5, 818 P2d 509 (1991) (continuing jurisdiction under the former Uniform Child Custody Jurisdiction Act, ORS 109.700 to 109.834 (1999)). Because no court had made the adverse findings specified by ORS 109.744(1), the trial court retained jurisdiction to enter the subsequent judgment. *Compare Snow v. Snow,* 189 Or App 189, 197, 74 P3d 1137 (2003) (a court in North Dakota, having made the initial custody award, had not yet found that it no longer had continuing jurisdiction), *with Medill and Medill,* 179 Or App 630, 638, 40 P3d 1087 (2002) (an Oregon trial court did determine that it lacked continuing jurisdiction).

Mother next contends that the trial court erred in awarding custody to father and requests that we exercise our discretion to review *de novo.* ORS 19.415(3)(b). Because mother has not explained why this is an exceptional case, we decline to exercise our discretion to review *de novo.* ORAP 5.40(8)(c) (providing that the court will exercise its discretion to review *de novo* "only in exceptional cases"); *see Underwood and Mallory,* 255 Or App 183, 186, 297 P3d 508 (2013) (explaining the restraints on our review). Accordingly, we are bound by the trial court's factual findings, which are supported by evidence in the record,[3] and review the court's "best interests determination * * * for abuse of discretion." *Sjomeling v. Lasser,* 251 Or App 172, 187, 285 P3d 1116, *rev den,* 353 Or 103 (2012). Under that standard, "we will reverse only if a trial court's discretionary determination is not a legally permissible one." *Id.*

Here, the trial court gave primary consideration to the best interests and welfare of the child, employing the

---

[3] We note that several of the trial court's findings are also predicated on credibility determinations. Specifically, the court found, albeit without reference to specific topics, that the paternal grandmother was credible and that father was more credible than mother. Even if we were to exercise our discretion to review *de novo* in this case, we would defer to those credibility determinations. *O'Donnell-Lamont and Lamont,* 337 Or 86, 89, 91 P3d 721 (2004), *cert den,* 543 US 1050 (2005) (noting that, even on *de novo* review, the court gives "considerable weight to the findings of the trial judge who had the opportunity to observe the witnesses and their demeanor in evaluating the credibility of their testimony." (Internal quotation marks omitted.)).

relevant factors listed in ORS 107.137(1).[4] The court found that several factors favored neither parent over the other. ORS 107.137(1)(a) (emotional ties between the child and other family members); ORS 107.137(1)(b) (parties' interest in and attitude toward the child); and, ORS 107.137(1)(e) (primary caregiver preference). But several factors favored father. ORS 107.137(1)(c) (continuing an existing relationship: where both parents have had about equal time with the child, but mother has tried to keep father out of the child's life); ORS 107.137(1)(d) (although not abuse, mother's injurious hostility toward father); and, ORS 107.137(1)(f) (mother's unwillingness to foster a relationship between other parent and the child). Ultimately, the court determined that an award of custody to father was in the child's best interests.

Despite mother's contention that she was the primary caregiver, she has not demonstrated that the trial court abused its discretion in awarding custody to father, where—as the trial court found—the history of child care has been mixed and mother unilaterally has created the circumstance of which she wishes to take advantage. Further, in exercising its discretion, the trial court, on balance, gave greater weight to other factors in light of the totality of the circumstances in this case, including the willingness of father to facilitate a relationship between the child and mother. *See* ORS 107.137(1)(f); *see Kirkpatrick and Kirkpatrick*, 248 Or App 539, 553-54, 273 P3d 361 (2012). Accordingly, the trial court did not err in its custody decision.

Affirmed.

---

[4] As noted above, 261 Or App at 79, the parties never married. Nonetheless, the trial court was required to consider the factors in ORS 107.137 in awarding custody. *See* ORS 109.103 (applying ORS 107.137 to unmarried parents). Insofar as the prior custody determination had been "dismissed," this subsequent determination was not a modification and proceeded immediately with consideration of the factors under ORS 107.137.