Submitted June 5, affirmed September 2, 2020

In the Matter of the Marriage of

Madison L. H. MAYFIELD,
nka Madison L. H. Yates,
*Petitioner-Respondent,*
*and*

Shane A. MAYFIELD,
*Respondent-Appellant.*

Clackamas County Circuit Court
16DR13108; A172567

474 P3d 454

In this child custody case, the trial court made a child custody determination as part of a marital dissolution proceeding, and, two years later, mother filed a motion asking the court to decline further jurisdiction and to allow a Washington court to assume jurisdiction over custody matters. The trial court granted the motion on two grounds: first, under ORS 109.744(1)(a), on the basis that the children do not have a significant connection with Oregon and that substantial evidence is no longer available in Oregon, and second, under ORS 109.761, on the basis that Oregon is an inconvenient forum and that Washington is a more appropriate forum. Father appeals. *Held*: Father raised a meaningful question regarding the proper construction of ORS 109.744(1)(a), but the Court of Appeals did not need to reach that issue, because it concluded that the trial court had acted within its discretion in declining jurisdiction on inconvenient-forum grounds.

Affirmed.

Jeffrey S. Jones, Judge.

Shane A. Mayfield filed the briefs *pro se*.

Emily T. Roberts filed the brief for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

AOYAGI, J.

Affirmed.

Tookey, J., concurring.

**AOYAGI, J.**

While living in Oregon, father and mother married, had three children, and divorced. An Oregon trial court decided child custody as part of the divorce judgment. Under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), Oregon thereby exercised initial-custody jurisdiction over the children, triggering exclusive, continuing jurisdiction until such time as a jurisdiction-concluding event occurred. Two years later, mother—who had moved to Washington with the children—filed a motion asking that the Oregon court decline further jurisdiction over custody matters and allow a Washington court to assume jurisdiction. The trial court granted mother's motion on two alternative grounds: first, under ORS 109.744(1)(a), on the basis that the children do not have a significant connection with Oregon and that substantial evidence is no longer available in Oregon, and second, under ORS 109.761, on the basis that Oregon is an inconvenient forum and that Washington is a more appropriate forum. Father appeals. For the following reasons, we affirm.

## FACTS

Father requests *de novo* review, but this is not an "exceptional" case, as is required to obtain *de novo* review. ORS 19.415(3)(b) (granting "sole discretion" to the Court of Appeals whether to allow *de novo* review in equitable proceedings); ORAP 5.40(8)(c) (stating that the court will exercise that discretion "only in exceptional cases"). We therefore decline to exercise *de novo* review and instead state the facts consistently with the trial court's findings.

Father and mother married in 2011 and separated in 2016. Three children were born of the marriage. In late 2016, mother and the children moved to Vancouver, Washington, where they have continuously resided since then. In January 2017, an Oregon court entered a general judgment of dissolution, which included a child custody order that gave mother sole legal custody of the children and gave father parenting time.

In January 2018, mother was interested in moving to Virginia and filed a motion to modify the custody order, which was denied by the Oregon court.

In October 2018, mother registered the 2017 and 2018 Oregon custody orders with the Clark County Superior Court in Washington. Subsequently, mother filed a petition in Washington to modify the parenting plan, residential schedule, or custody order. That matter was held pending resolution of jurisdictional issues.

In August 2019, mother filed a motion in the Oregon court, requesting that it decline further jurisdiction and allow the Washington court to assume jurisdiction to make custody determinations. After a hearing—at which a Clark County Superior Court judge was present by telephone—the court granted mother's motion, focusing on the location of witnesses and evidence that would be relevant to a custody dispute. The trial court ruled orally at the conclusion of the hearing and, later, entered a written order with express findings and conclusions.

In its written order, the court found that father resides in Oregon, that mother and the children reside in Washington, and that "[t]he vast majority of the information regarding the children's present circumstances, with the exception of the location of [f]ather and some extended family, is all located in Washington." That "includes various family members, healthcare providers, school, and activities." Further, "any experts, such as an evaluator, that would be retained to assist the court with the issues pertaining to custody and parenting time would also be situated in Washington." On that basis, the court concluded that it no longer had exclusive, continuing jurisdiction under ORS 109.744(1)(a), because the children do not have a significant connection with Oregon and substantial evidence is not available in Oregon.

Alternatively, the court declined continuing jurisdiction on inconvenient-forum grounds, ORS 109.761, explaining in its written order that, "[w]hile [father] continues to reside in Oregon and there are some family members of both parties that reside in Oregon, other evidence, such as witnesses, a custody evaluator, and the child[ren], are all in Washington." Further, "[w]hile this [c]ourt has familiarity with this case, this [c]ourt does not believe that the court in Washington would have any issue getting up to speed in this matter."

The court thus granted mother's motion, declining further jurisdiction to make custody determinations for the children and transferring jurisdiction to the Clark County Superior Court in Washington. Father appeals. He raises three assignments of error, but each assignment effectively addresses an aspect of the trial court's reasoning, so we address them together. *See Cedartech, Inc. v. Strader*, 293 Or App 252, 256, 428 P3d 961 (2018) ("The assignments are criticisms of the trial court's *reasons* for its result but are not truly *rulings* of the trial court of the sort that are required to be identified in an assignment of error." (Emphases in original.)).

## ANALYSIS

We begin with father's challenge to the trial court's conclusion that, under ORS 109.744(1)(a), a provision of the UCCJEA, it no longer had jurisdiction to make custody decisions for the children.

As relevant here, ORS 109.744(1) provides that, once an Oregon court makes an initial custody determination for a child, it has exclusive, continuing jurisdiction to make all custody determinations for that child (except for temporary emergency orders), until such time as one of two determinations is made:

> "(a)  *A court of this state determines* that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training and personal relationships; *or*
>
> "(b)  *A court of this state or a court of another state determines* that the child, the child's parents and any person acting as a parent do not presently reside in this state."

(Emphases added.) *See also Campbell v. Tardio*, 261 Or App 78, 82, 323 P3d 317 (2014) (where an Oregon court had made an initial custody determination under ORS 109.741, that court "had continuing jurisdiction until a court of this or another state made findings contrary to continuing jurisdiction," and, because no court had made the specified findings under ORS 109.744(1), the Oregon court continued to have jurisdiction).

Relatedly, ORS 109.747 provides that an Oregon court may not modify a child custody determination made by a court of *another state*—with a limited exception for temporary emergency jurisdiction—unless the Oregon court meets the requirements for initial-custody jurisdiction *and* either (1) the other state's court determines that it no longer has exclusive, continuing jurisdiction under ORS 109.744 or that an Oregon court would be a more convenient forum under ORS 109.761, or (2) an Oregon court or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state. Because the UCCJEA is a uniform act, any other state that has adopted the UCCJEA should have a similar statutory provision, precluding its courts from modifying an existing Oregon child custody determination unless its courts meet the requirements for initial-custody jurisdiction *and* one of the specified judicial determinations has been made. *See, e.g.*, RCW 26.27.221 (Washington statute identical to ORS 109.747).

In this case, applying ORS 109.744(1)(a), the trial court determined that the children do not have a significant connection with Oregon and that substantial evidence is not available in Oregon. Father contests that determination, arguing, among other things, that the court placed too much emphasis on the children's connection with Washington, while understating their significant ties to Oregon, and that the court wrongly focused on the fact that, absent the existing Oregon custody orders, Washington would have initial-custody jurisdiction as the children's current home state. *See* ORS 109.741(1)(a) (granting jurisdiction to a child's "home state" to make an initial custody determination); ORS 109.704(7) (defining a child's "home state," as relevant here, as the state in which the child lived with a parent "for at least six consecutive months immediately before the commencement of a child custody proceeding").

In response, mother defends the trial court's determination under ORS 109.744(1)(a), as well as argues that, under the UCCJEA, a court lacks jurisdiction to modify its own custody order unless it meets the requirements for initial-custody jurisdiction at the time of modification. We

squarely reject the latter argument. To modify an existing Oregon custody order, an Oregon court must meet the requirements for initial-custody jurisdiction *only if* one of the necessary determinations in ORS 109.744(1) has been made, such that the Oregon court has lost exclusive, continuing jurisdiction. *See* ORS 109.744(2) ("A court of this state that has made a child custody determination *and does not have exclusive, continuing jurisdiction under this section* may modify that determination only if the court has jurisdiction to make an initial determination under ORS 109.741." (Emphasis added.)). Mother cites *Medill and Medill*, 179 Or App 630, 40 P3d 1087 (2002), as authority for her argument, but it does not support that argument. In *Medill*, we applied ORS 109.744(2) and addressed whether the trial court had initial-custody jurisdiction at the time of modification only *after* holding that the court had lost exclusive, continuing jurisdiction under ORS 109.744(1). 179 Or App at 642.

Turning to the trial court's ORS 109.744(1) determination, the trial court had to determine both that the children do not have a significant connection with Oregon *and* that substantial evidence is no longer available in Oregon concerning the children's care, protection, training, and personal relationships, before it could conclude that it no longer had exclusive, continuing jurisdiction. ORS 109.744(1)(a); *see also Medill*, 179 Or App at 639 ("[T]he trial court stated that it did not have exclusive continuing jurisdiction under ORS 109.744(1)(a), a conclusion that depended on the court having found that the children did not have a significant connection to this state *and* that substantial evidence concerning their welfare was not available here." (Emphasis in original.)).[1] Thus, if the trial court erred in either determination, its conclusion under ORS 109.744(1)(a) was erroneous.

_____

[1] *Medill* states unequivocally that, under ORS 109.744(1)(a), for an Oregon court to lose exclusive, continuing jurisdiction after making an initial custody determination for a child, the Oregon court must determine *both* that the child does not have a significant connection with Oregon *and* that substantial evidence is no longer available in Oregon. *Medill*, 179 Or App at 639. That statement follows the plain text of ORS 109.744(1)(a), which permits no other construction. To the extent that *dicta* in a later portion of *Medill*, in which the majority responds to the dissent, inadvertently inverts that standard and suggests that *either* determination triggers a loss of exclusive, continuing jurisdiction—*see Medill*, 179 Or App at 641—that *dicta* is inconsistent with the plain language of the statute and with the court's own earlier statements in *Medill*.

The first issue, then, is whether the trial court correctly determined that the children do not have a significant connection with Oregon. It is undisputed that the children were born in Oregon, that they lived in Oregon for their entire (albeit young) lives until moving to Washington in fall 2016, that the children have both maternal and paternal relatives in Oregon, and that father continues to live in Oregon and exercises parenting time in Oregon.

In most states that have adopted the UCCJEA and construed the phrase "significant connection," there is no question that such an evidentiary record would preclude the determination that the trial court made. *See State v. L. P. L. O.*, 280 Or App 292, 305-06, 381 P3d 846 (2016) (we consider other states' interpretations of UCCJEA language in construing UCCJEA provisions). For example, under Michigan's equivalent of ORS 109.744(1)(a), "the significant connection that permits exercise of exclusive, continuing jurisdiction *** exists where one parent resides in the state, maintains a meaningful relationship with the child, and, in maintaining the relationship, exercises parenting time in the state." *White v. Harrison-White*, 280 Mich App 383, 394, 760 NW2d 691, 698 (2008). In adopting that interpretation, the Michigan court noted that it comports with the interpretation of the majority of jurisdictions, as well as "the plain and ordinary meaning of the phrase, and the overarching purpose of the UCCJEA to prevent jurisdictional disputes by granting exclusive, continuing jurisdiction to the state that entered the initial custody decree, so long as the relationship between the child and the parent residing in the state does not become so attenuated that the requisite significant connection no longer exists." *Id*.

Father argues, in substance, for an interpretation of "significant connection" consistent with that adopted by states such as Michigan. However, on the issue of "significant connection," Oregon is an outlier. *See id*. at 390-91, 760 NW2d at 697 (identifying Oregon as having adopted a "narrower" interpretation of "significant connection" than other states). In *Medill*—a case that we decided very shortly after the enactment of the Oregon UCCJEA and that involved a rather extreme lack of connection with

Oregon[2]—we described the phrase "significant connection" in ORS 109.744(1)(a) as requiring "maximum rather than minimum" contacts. *Medill*, 179 Or App at 641. *Medill* suggests that a child can have a "significant connection" with only one state and that it is whichever state with which the child has the *most* contacts. *See id.* Under that standard, the trial court's determination that the children in this case had more of a connection with Washington than Oregon, and therefore lacked a significant connection with Oregon, would not appear to be erroneous.

Several aspects of our construction of "significant connection" in *Medill* are concerning with the benefit of hindsight. One is our minimal discussion of the issue, consisting of a single sentence of text followed by two citations to cases decided under the Uniform Child Custody Jurisdiction Act ("UCCJA"), the predecessor to the UCCJEA. *See id.* Another is our exclusive reliance on UCCJA precedent. Unlike the UCCJA, the UCCJEA commentary expressly states: "If *the relationship between the child and the person remaining in the State with exclusive, continuing jurisdiction* becomes *so attenuated* that the court could no longer find significant connections and substantial evidence, jurisdiction would no longer exist." UCCJEA § 202 comment, 9 ULA 649, 674 (1997) (emphases added); *see also State of Oregon DCS v. Anderson*, 189 Or App 162, 169-70, 74 P3d 1149, *rev den*, 336 Or 92 (2003) (treating commentary on a uniform act as part of the act's legislative history). That commentary supports a parental-relationship-oriented interpretation of "significant connection," consistent with the interpretation of states like Michigan, rather than the quantity-of-contacts

---

[2] The facts of *Medill* were somewhat unusual. By agreement of the parties, an Oregon court had made an initial custody determination for the parties' children as part of the parties' marital dissolution judgment, even though neither the wife nor the children had ever been to Oregon. *Medill*, 179 Or App at 632-33. When the husband later sought to modify the custody order, the Oregon court determined that the children did not have a significant connection with Oregon and that substantial evidence was not available in Oregon and, consequently, concluded that it did not have exclusive, continuing jurisdiction of custody matters under ORS 109.744(1)(a). *Id.* at 633-64. We affirmed that conclusion given the trial court's findings, which were supported by evidence in the record, including that the children had been born and lived their entire lives in Germany and had visited Oregon only once and that "all" of the witnesses necessary to resolve the parties' custody dispute resided in Germany. *Id.* at 634-35, 638.

interpretation that we adopted in *Medill*. Finally, our status as an outlier among UCCJEA jurisdictions is noteworthy in itself, given ORS 109.831's express recognition of "the need to promote uniformity of the law with respect to [the UCCJEA's] subject matter among states that enact it."[3]

As such, we do not foreclose the possibility that *Medill* is plainly wrong as to the meaning of "significant connection" in ORS 109.744(1)(a). *See State v. Civil*, 283 Or App 395, 405-06, 388 P3d 1185 (2017) (we will over-rule existing precedent only if it is "plainly wrong," which is "a rigorous standard grounded in presumptive fidelity to *stare decisis*"); *see also Farmers Ins. Co. v. Mowry*, 350 Or 686, 698, 261 P3d 1 (2011) (it is appropriate for a court to revisit its own prior construction of a statute when the court was "not presented with an important argument or failed to apply [its] usual framework for decision or ade-quately analyze the controlling issue" in the prior case). At the same time, we decline to resolve that issue in this case. Although father's arguments implicitly challenge *Medill*'s construction of the phrase "significant connection," he has not expressly requested that we overrule *Medill*, so neither party has directly briefed that issue. In that context, we are disinclined to revisit the correct construction of "significant connection" unless we strictly must, and, here, we conclude that that is not the case, because we are ultimately able to resolve this appeal on a different ground, which is the trial court's inconvenient-forum ruling.

In addition to concluding that it lacked continuing jurisdiction under ORS 109.744(1)(a), the trial court alterna-tively relied on ORS 109.761(1) to decline continuing juris-diction on the ground that Oregon is an inconvenient forum and that Washington is a more appropriate forum. ORS

---

[3] States that have adopted the same or similar construction of "significant connection" as described in *White* include Alabama, Arkansas, Georgia, Kansas, Kentucky, New Hampshire, Pennsylvania, and Texas. *See White*, 280 Mich App at 392-94, 760 NW2d at 697-98 (discussing caselaw from Arkansas, Georgia, Kansas, Kentucky, and Texas); *Ex Parte Collins*, 184 So3d 1036, 1038-39 (Ala Civ App 2015); *Rennie v. Rosenthol*, 995 A2d 1217, 1221-23 (Pa Super Ct 2010); *In Matter of Sheys*, 168 NH 35, 38-39, 120 A3d 150, 153 (NH 2015). Conversely, we are unaware of any other published appellate opinion of any other state that has adopted a "maximum contacts" approach to "significant connection" under the UCCJEA (as distinct from the UCCJA).

109.761(1) provides that an Oregon court with jurisdiction under the UCCJEA "may decline to exercise its jurisdiction at any time if the court determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." That determination may be made upon a party's motion, the court's own motion, or another court's request. ORS 109.761(1). To make the determination, the court "shall consider whether it is appropriate for a court of another state to exercise jurisdiction" and "shall consider all relevant factors, including" eight specified factors related to domestic violence, how long the child has resided out of Oregon, the distance between Oregon and the other state's court, the parties' relative financial circumstances, any agreement between the parties as to which state should assume jurisdiction, the nature and location of the evidence necessary to resolve pending custody litigation, the ability of each state's court to decide the issue expeditiously, and the familiarity of each state's court with the facts and issues in the pending custody litigation. ORS 109.761(2).

Akin to our review of *forum non conveniens* rulings in other types of cases, we review an inconvenient-forum ruling under ORS 109.761 for abuse of discretion. *See Espinoza v. Evergreen Helicopters, Inc.*, 359 Or 63, 116, 376 P3d 960 (2016) (a trial court's decision to dismiss or stay an action for *forum non conveniens* is to be reviewed for abuse of discretion); *see also, e.g. Roman v. Karren*, 461 P3d 1252, 1256 (Alaska 2020) (under Alaska UCCJEA, "a superior court's decision to exercise or decline jurisdiction based on inconvenient forum [is reviewed] for abuse of discretion"); *Interest of C.H.*, 595 SW3d 272, 276 (Tex App 2019) (same under Texas UCCJEA).

As part of its oral ruling, the trial court expressly considered the eight factors delineated in ORS 109.761(2) and determined that Oregon is an inconvenient forum and that Washington is a more appropriate forum. Father first challenges that decision on procedural grounds, asserting that "[t]he motion before the court was a motion to decline jurisdiction, not a motion for *forum non conveniens*," and that father "did not have an opportunity to respond to this separate motion." Father also challenges the decision on the

merits, essentially contesting the accuracy of certain findings of the court regarding the location of the evidence relevant to a custody determination.

We disagree that father lacked adequate notice of the inconvenient-forum issue. Mother's written motion was filed nearly a month before the hearing and expressly moved the court for an order "[d]eclining further jurisdiction based on a lack of subject matter jurisdiction *and inconvenient forum*." (Emphasis added.) Moreover, the substantive aspect of the court's inconvenient-forum decision with which father takes issue on appeal—the location of evidence—was already at issue under ORS 109.744(1)(a), as relevant to whether substantial evidence is still available in Oregon. For both reasons, father was on sufficient notice to make his desired record and arguments, and we reject his procedural challenge to the inconvenient-forum determination.

As for father's merits challenge, upon review of the record, the trial court's findings that father identifies as flawed are supported by evidence, even if the court could have made different findings on the same record. *Dept. of Human Services v. S. C. S.*, 253 Or App 319, 323, 290 P3d 903 (2012), *rev den*, 353 Or 428 (2013) ("[W]e review the court's *** findings of historical fact for any evidence in the record."). On the whole, we cannot say that the trial court abused its discretion in determining that Oregon is no longer a convenient forum and that the court in Clark County, Washington, is a more appropriate forum under the circumstances. Such matters are left to the trial court's sound discretion, and the trial court's decision in this case fell within the range of legally permissible outcomes.

Accordingly, the trial court did not err in declining further jurisdiction on inconvenient-forum grounds under ORS 109.761. It follows that the trial court did not err in granting mother's motion, regardless of the correctness of its ruling under ORS 109.744(1)(a).

Affirmed.

**TOOKEY, J.,** concurring.

Because I agree with the majority's disposition of this case on the basis of inconvenient forum but do not join

in its discussion of our *en banc* decision in *Medill and Medill*, 179 Or App 630, 40 P3d 1087 (2002), I write separately to concur.

I express no opinion on the majority's discussion of *Medill*. I believe that, under the circumstances of this case, the issues raised regarding *Medill* are best left for another day, when they are squarely before this court.