Argued and submitted October 25, 2022, affirmed August 16, 2023

Gene ALBRECHT,
an individual;
James Dunn, an individual;
and Eastmoreland Racquet Club Estates Homeowners’
Association, Inc.,
an Oregon domestic non-profit corporation,
*Plaintiffs-Respondents,*

*v.*

Terry W. EMMERT,
an individual,
and Courts Connection, LLC,
an Oregon domestic limited liability company,
*Defendants-Appellants,*

*and*

DELTA DEVELOPMENT COMPANY,
an Oregon domestic limited liability company et al.,
*Defendants.*

Multnomah County Circuit Court
18CV31745; A173594

535 P3d 785

This appeal concerns a decade-long dispute between property owners on a cul-de-sac in a residential neighborhood in Portland about the use of the property at the end of the cul-de-sac as a multisport facility known as Eastmoreland Sports Club. The neighbors of the sports club obtained a declaratory judgment and injunction in the circuit court that, among other things, declared that the legal nonconforming use of Emmert’s property as a private tennis club had been lost, enjoined them from operating the multisport club on that property, and ordered them to use and develop the property in conformity with applicable residential zoning regulations. The City of Portland was enjoined from using the Portland City Code to approve past, present, or future changes in the property’s nonconforming use, and it was to regulate the use and development of the property using applicable residential zoning regulations. The city is not a party to this appeal. Emmert appealed and assigns error to the trial court (1) finding subject matter jurisdiction to decide land use matters, (2) finding that the plaintiffs have standing to file this declaratory judgment action, and (3) declaring that the nonconforming use had been lost and that the city’s approval of a change in use was not valid. *Held*: The Court of Appeals rejected the first assignment of error because although ORS 197.825(1) gives LUBA exclusive jurisdiction to review land use decisions, the circuit courts retain jurisdiction to “grant declaratory [and] injunctive relief in proceedings arising from” final land use decisions. ORS 197.825(3)(a). It likewise rejected the second assignment of error because the individual plaintiffs alleged and offered evidence of (1) an interest in property

in close proximity to Emmert's property (the HOA plaintiff relied upon ORS 94.630(1)(e)(C) for its authority to seek declaratory relief for neighboring property owners in its representative capacity), (2) that the use of Emmert's property as a multisport club impacted plaintiffs' ability to use their own property, and (3) that the court's decision would have a practical effect on plaintiffs' use of their property. Thus, the trial court did not err in concluding that plaintiffs had standing to file this declaratory judgment action. And, finally, the Court of Appeals rejected the third assignment of error concluding that the trial court did not abuse its discretion in granting declaratory relief on the record in this case.

Affirmed.


Katharine von Ter Stegge, Judge.

Geoffrey B. Silverman argued the cause for appellants. Also on the briefs was The Law Office of Geoffrey B. Silverman, LLC.

Christopher P. Koback argued the cause for respondents. Also on the brief was Hathaway Larson LLP.

Before Mooney, Presiding Judge, and Lagesen, Chief Judge, and Pagán, Judge.*

MOONEY, P. J.

Affirmed.

_____

*Lagesen, C. J., vice James, J. pro tempore.

### MOONEY, P. J.

Defendants Terry W. Emmert and Courts Connection, LLC, (Emmert)[1] appeal from a Declaratory Judgment and Injunction that, among other things, declared that the legal nonconforming use of their Southeast Portland property (the property) as a private tennis club had been lost, enjoined them from operating the Eastmoreland Sports Club on that property, and ordered them to use and develop the property in conformity with applicable residential zoning regulations. That Judgment and Injunction also enjoined the City of Portland (the city) from using the Portland City Code (PCC) to approve past, present, or future changes in the property's nonconforming use, and it ordered the city to regulate the use and development of the property using applicable residential zoning regulations. The city is not a party to this appeal. Emmert assigns error to the trial court (1) finding subject matter jurisdiction to decide land use matters, (2) finding that the plaintiffs have standing to file this declaratory judgment action, and (3) declaring that the nonconforming use had been lost and that the city's approval of a change in use was not valid. We affirm.

This appeal concerns a decade-long dispute between neighboring property owners. Although a thorough review of the specific details of this dispute would not benefit the bench, the bar, or the public, we include enough background information to provide context for our analysis and disposition.

Emmert purchased the tennis club and related real property that is the subject of this case in 1995. The property is in a residential neighborhood in Southeast Portland, at the end of a cul-de-sac. The tennis club was built in 1976 after being authorized under the city's then-existing zoning code. The city code changed in 1991 and, among other things, no longer permitted athletic clubs in residential zones. The tennis club was grandfathered into the new zoning structure as a "legal nonconforming use" under PCC 33.258.035.[2]

---

[1] For ease of reference, we refer to defendants as "Emmert" unless the context requires otherwise.

[2] PCC 33.258.035 provides:

"The nonconforming situation regulations apply only to those nonconforming situations which were allowed when established or which were approved through a land use review. Additionally, they must have been

Its use as a tennis club was determined to fit within the Retail Sales and Service category under PCC 33.920.250.

Emmert operated the property and facilities as a tennis club until 2012, when he closed the club, redeveloped the property, and opened a multi-sport athletic facility there. Tennis stopped altogether at the end of 2013 when the remaining tennis courts were repurposed for parking. The change in use has resulted in an increase in the use of the property and a corresponding increase in traffic, parking, and related issues for the neighborhood. The plaintiffs are neighbors living along the cul-de-sac that ends at the property and which provides the only vehicular access to the property.

A rancorous dispute concerning the changed use of the property and the impact on neighbors developed between Emmert and plaintiffs over the course of the next three to four years. We will not detail the events of that time period other than to note that the city became involved, and it opened an enforcement case, CC 12-175966, in 2013, citing Emmert for expanding on-site parking onto outdoor tennis courts. The neighboring property owners later filed a mandamus proceeding related to the city's enforcement of the zoning code after which, in June 2016, the city issued a new citation to Emmert for zoning code violations.

The new citation was issued to Emmert for violating PCC 33.258.050(B),[3] using the same enforcement case file that it had opened in 2013. Specifically, the city cited him for changing to a different use within the Retail Sales and Service category, from "private tennis club for use by neighborhood residents to multi-sport athletic facility

---

maintained over time. These situations have legal nonconforming status. Nonconforming situations which were not allowed when established or have not been maintained over time have no legal right to continue (often referred to as 'grandfather rights') and must be removed."

[3] PCC 33.258.050(B) provides:

"A change to a different use in the same use category *** is allowed by right, provided that the off-site impact standards of Chapter 33.262, Off-Site Impacts, are met. The applicant must document in advance that the nonconforming use will meet the off-site impact standards. For changes of use within the same use category which do not meet the off-site impact standards, the change may be allowed through a nonconforming situation review."

attracting non-neighborhood participants," without documenting in advance that the change in use would meet off-site impact standards or receiving approval of the change through a nonconforming situation review. To correct the violation, Emmert was given three options: (1) discontinue all non-tennis club use of the property, (2) proceed with an off-site impact standards approval process, or (3) if the off-site impact standards could not be met, then seek approval through a Type II nonconforming situation review. Emmert sought administrative review of the citation which was confirmed as properly cited in December 2016. Emmert appealed that decision, and in March 2017, the hearings officer sustained the citation and confirmed that the use had, in fact, changed as alleged in the citation.

Emmert opted to pursue an off-site impacts standard review, which the city clarified would need to be processed as part of the existing enforcement case. Approximately one year later, in April 2018, Emmert submitted off-site impact documents and requested a change in use to multi-sport athletic club. That review was conducted on the basis of the documentation supplied by Emmert, without public notice or comment, pursuant to PCC 33.258.038.[4] Another year after that, in March 2019, a Supervising Planner from the city's Bureau of Development Services issued a case closure decision (CCD) confirming that off-site impact standards had been met, authorizing the change in use to multi-sport athletic facility, and closing code enforcement case number CC 12-175966 as "corrected" and "resolved." Within the next month, the neighboring property owners and homeowners' association (plaintiffs) filed a petition for writ of review of the CCD in Multnomah County Circuit Court case number 19CV17237. The city was the only named respondent, and no persons or entities sought intervention in that case.

_____

[4] PCC 33.258.038 provides, in part:

"The applicant must provide evidence to show that the situation was allowed when established and was maintained over time. If the applicant provides standard evidence from the list below, the Director of [the city's Bureau of Development Services] BDS will determine if the evidence is satisfactory. The Director of BDS will also determine, based on the evidence, what the current legal use is, using the definitions in Chapter 33.910 and the use categories in Chapter 33.920. If the applicant provides evidence other than the standard evidence listed below, a Determination of Legal Nonconforming Status is required."

Eight months before the CCD was issued, plaintiffs had filed this declaratory judgment action in Multnomah County Circuit Court, Case No. 18CV31745, claiming that increased traffic associated with the change in use had negatively impacted the quiet enjoyment of their properties. They sought a declaration that, among other things, the nonconforming use as a tennis club had been lost and that PCC 33.258 concerning "non-conforming situations" no longer applied to the property. They also sought an order enjoining Emmert from developing and operating, and the city from approving, the property for any use not in conformity with the applicable residential zoning requirements.

The trial court consolidated the two cases for purposes of trial as a matter of judicial economy because there was overlap in a number of factual and legal issues and much of the evidence and testimony would be the same. They remained separate legal cases for all other purposes and the decisions in the cases were reflected in separate judgments.

The trial court first issued an order in Case No. 19CV17237, reversing the city's CCD and finding, among other things, that "[t]he nonconforming use of the property changed in August 2012," that tennis "ceased completely at the property by 2013," that Emmert "did not seek legal approval for the change in nonconforming use until 2018, more than five years after the nonconforming use had changed," and that at the time he sought approval "the original nonconforming use had been lost as discontinued for more than five years, and the property had reverted to its base zoning." That order was not appealed. It is not before us.

Two days later, the trial court signed a declaratory judgment and injunction in Case No. 18CV31745. The court declared, essentially, that the original nonconforming use was discontinued in 2012, that the nonconforming use designation "was lost in 2018 due to a five-year discontinuation in that use," that PCC 33.258 concerning nonconforming situations no longer applies to the property and "cannot be reinstated or revived," and that the property reverted to its base zoning "and is restricted to uses permitted under" applicable residential and overlay zones. The court also enjoined

Emmert from using the property for any use not permitted under the applicable residential and overlay zones, and it enjoined the city from "approving past, present, or future nonconforming use or development at the subject property." Emmert appealed that judgment, and it is that case that is before us. The city did not appeal and does not appear before us.

*Jurisdiction:* Emmert argues first that "[t]his court does not have jurisdiction over the Case Closure Decision[.]" We review such matters for legal error. *Campbell v. Tardio*, 261 Or App 78, 80, 323 P3d 317 (2014). The difficulty with Emmert's jurisdictional argument is that it refers repeatedly to the CCD which was the final decision that closed the city's code enforcement case. Review of that decision was the subject of the petition for writ of review in circuit court Case No. 19CV17237. There was no appeal filed in that case, and the circuit court's reversal of the CCD is not before us.

This is an appeal from the declaratory relief action that was tried in the circuit court. Emmert's focus on the CCD in his argument in support of his first assignment of error concerning jurisdiction detracts from the precision that ORAP 5.45(3) requires of that assignment. Whether the circuit court had jurisdiction to hear the writ of review case is not relevant to our review of this case. We nevertheless understand that at the base of Emmert's jurisdictional argument in this case is his contention that this is a land use matter that should have been appealed to LUBA. Regardless of the adequacy of his assignment of error, it raises jurisdiction as an issue, and we have "an independent obligation to acknowledge a defect in jurisdiction" as well as "the existence of jurisdiction," whichever our review reveals. *State v. Ainsworth*, 346 Or 524, 538 n 16, 213 P3d 1225 (2009).

The question is whether the trial court had jurisdiction to issue declaratory relief in this case. To do so, it "must also have [had] jurisdiction over the subject matter of the controversy." *Brown v. Oregon State Bar*, 293 Or 446, 449, 648 P2d 1289 (1982). Article VII (Original), section 9, of the Oregon Constitution vests "all judicial power, authority, and jurisdiction" not otherwise constitutionally vested in some

other court, in the circuit courts. That the circuit courts have jurisdiction to determine the respective rights of property owners in real property goes back at least as far as the day Oregon entered the Union as a state. *See, e.g.*, *Groslouis v. Northcut*, 3 Or 394 (1872) (discussing the role of the court in adjudicating the rights of married persons to real property in a divorce proceeding). And while ORS 197.825(1) gives LUBA exclusive jurisdiction to review land use decisions, the circuit courts retain jurisdiction to "grant declaratory [and] injunctive [] relief in proceedings arising from" final land use decisions. ORS 197.825(3)(a).

ORS 28.010 provides, in part, that "[c]ourts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed." ORS 28.020 provides, more specifically that:

"[a]ny person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or franchise may have determined any question of construction or validity arising under any such instrument, constitution, statute, municipal charter, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

The purpose of a declaratory relief action "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations, and is to be liberally construed and administered." ORS 28.120.

Plaintiffs sought a declaration of rights based upon their ownership interests in property through deed, contract or otherwise, the existing zoning code, and zoning decisions that had already been made with respect to Emmert's property that affected plaintiffs' ability to enjoy the use of their own properties. Emmert argues that plaintiffs were not entitled to file the declaratory relief case because the process of reviewing Emmert's documents to determine any off-site impacts had not yet been concluded. He describes the city planner's ultimate decision to close the enforcement case as a land use decision that required the planner to exercise

his judgment and discretion. But, again, the problem with that argument is that the CCD was reviewed by the circuit court in the writ of review case, 19CV17237, and there was no appeal. The CCD and its reversal are not before us.

Plaintiffs sought a declaration of the rights of the parties regarding the use of Emmert's property as that use impacts plaintiffs' use and enjoyment of their own property. The dispute between the parties caused uncertainty regarding their respective rights even after the city sustained the citation against Emmert for violating the zoning code. The dispute and uncertainty had developed and been ongoing for a number of years. To be sure, Emmert sought to correct the violation, but by the time he submitted his documents, another year had passed. Emmert points us to no case or other authority that bars plaintiffs from seeking certainty of existing property rights through a declaratory relief action under the circumstances presented here. We reject Emmert's first assignment of error.

*Standing:* Standing is also reviewed for legal error. *See Kellas v. Dept. of Corrections*, 341 Or 471, 476-86, 145 P3d 139 (2006) (applying standard). Standing, like jurisdiction, "is not a generic concept but largely depends on the statute under which the plaintiff seeks relief." *MT & M Gaming, Inc. v. City of Portland*, 360 Or 544, 553, 383 P3d 800 (2016). As we recently explained, "standing means the right to obtain an adjudication." *Andlovec v. Spoto*, 326 Or App 525, 535-36, 532 P3d 531 (2023). To seek declaratory relief under ORS 28.010 to 28.160, plaintiffs must establish that their "rights, status or other legal relations" are "affected by" Emmert's use of his property and the application of the zoning code and decisions made under that code to his property. ORS 28.020.

Three considerations are relevant to the question of standing on this record: (1) there must be some injury or impact to a legally recognized interest beyond an abstract interest in the correct application or the validity of a law; (2) the injury or impact must be probable, not speculative; and (3) the court's decision must have a practical effect on plaintiffs' rights. *Morgan v. Sisters School District #6*, 353 Or 189, 195-97, 301 P3d 419 (2013) (internal quotations

omitted). The individual plaintiffs alleged and offered evidence of an interest in their property in close proximity to Emmert's property, and the HOA relies upon ORS 94.630 (1)(e)(C) for its authority to seek declaratory relief for neighboring property owners in its representative capacity. The allegations and record also support a determination that the new use on Emmert's property impacts the plaintiffs' ability to use their own property, and that the court's decision would have a practical effect on their use of that property. Emmert's arguments notwithstanding, we agree with the trial court and conclude that the plaintiffs had standing.

*Grant of Declaratory Relief:* Finally, we review the trial court's decision to grant declaratory relief for abuse of discretion. *See Brown*, 293 Or at 450-51. The trial court reversed the CCD in the writ of review case that was consolidated with the declaratory relief case for trial. But as we have already established, the trial court's decision in the writ of review case was not appealed. Given that, we cannot say that the trial court abused its discretion in declaring the parties' rights in this case in alignment with that other judgment. To have done the opposite was not in the range of permissible outcomes once the CCD was reversed.

Affirmed.